THE STATE, EX REL. HERBERT, ATTY. GENL., APPELLEE, *v.*
THE HOCKING VALLEY MINING CO., APPELLANT.

(No. 3494—Decided February 23, 1943.)

*Mr. Thomas J. Herbert,* attorney general, and *Mr. Ansel H. Wilson,* for appellee.
*Mr. H. C. Allread,* for appellant.

HORNBECK, J. This is an appeal on questions of law from a judgment of the Common Pleas Court in the sum of $390.70, with costs, on behalf of the plaintiff and against the defendant.

The facts essential to an appreciation of the legal question presented are that on or about January 10, 1929, Floyd Bolin died as the result of an accidental injury, at which time he was an employee of the defendant company, a self-insurer under the Workmen's

Compensation Act of Ohio. Among other dependents, Floyd Bolin left surviving him Meskil Bolin, an illegitimate child, born within a year prior to the death of Floyd Bolin. The mother of Meskil Bolin, and the child, who was a babe in arms, did not at the time of the injury or death of Floyd Bolin, or at any other time, live with him nor did the father and mother of the child intermarry.

On October 1, 1928, Louisa Ellen Six filed complaint in the Probate Court of Athens county, Ohio, against Floyd Bolin, charging him with being the father of her illegitimate child, Meskil Bolin. Thereafter, Floyd Bolin plead guilty to the charge, was adjudged the putative father of Meskil Bolin, and ordered to pay the sum of $2.50 per week for the support of the child. Such order was in full force and effect at the time of the injury to, and death of, Floyd Bolin. Later, the Industrial Commission found that, among other dependents of decedent, "the illegitimate child known as Meskil Bolin was wholly dependent upon the deceased" and awarded the child a share of the total sum awarded by reason of the accidental death of Floyd Bolin.

Subsequent to the order of the commission the defendant employer and the guardian of Meskil Bolin executed a paper designated "Agreement as to compensation on account of death," on a form prescribed by the Industrial Commission, in which the defendant agreed to pay the award in favor of Meskil Bolin in semi-monthly instalments of $4.50 each. The payments were thereafter made by the defendant pursuant to the order of the commission, and its agreement aforesaid, in the sum of $558, but on or about June 7, 1933, it discontinued further payments, and on July 16, 1941, there had accrued a balance of $376.61 of the amount awarded to Meskil Bolin, which, on that date,

the commission ordered paid to Meskil Bolin in a lump sum.

The question presented is whether Meskil Bolin is entitled to share in the award made by reason of the death of his father, Floyd Bolin, the answer to which requires determination whether the child is a dependent within the contemplation of the Workmen's Compensation Act.

The Ohio Constitution, Section 35, Article II, authorizes the passage of laws establishing a state fund to be created by compulsory contributions thereto by employers, for the purpose of providing compensation to workmen and their *dependents,* for death, injuries, or occupational disease occasioned in the course of such workmen's employment. Pursuant thereto, among other sections, there was enacted Section 1465-68, General Code, reading in part:

"Every employee mentioned in Section 1465-61, who is injured, and the *dependents* of such as are killed in the course of employment, * * * shall be entitled to receive, * * * such compensation for loss sustained on account of such injury or death, * * *." (Italics ours.)

At the outset it should be noted that Section 1465-68, General Code, is the basic statute which broadly states who are entitled to compensation under the workmen's compensation fund. Meskil Bolin was in fact, as appears from the statement heretofore and which we will demonstrate hereinafter, the dependent of Floyd Bolin at the time of his injury and as such came within the express provisions of the general section defining who are entitled to compensation, namely, Section 1465-68, General Code. Section 1465-82, General Code, as effective upon the date of the injury of Floyd Bolin, in the first four paragraphs thereof, defined the amount of benefits to be awarded in the event of the death of the injured employee, if no dependents, or to those who are wholly dependent or to those who are

partly dependent, and following these four provisions was paragraph five, now carried in the statute as paragraph four, which letter numbering we adopt. It reads as follows:

"4. The following persons shall be presumed to be wholly dependent for the support upon a deceased employee:

"(A) A wife upon a husband with whom she lives at the time of his death.

"(B) A child or children under the age of sixteen years (or over said age if physically or mentally incapacitated from earning) upon the parent with whom he is living at the time of the death of such parent, or for whose maintenance such parent was legally liable at the time of his death. * * *

"*In all other cases,* the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as dependent unless a member of the family of the deceased employee, or bears to him the relation of husband, or widow, lineal descendant, ancestor or brother or sister. The word 'child' as used in this act shall include a posthumous child, and a child legally adopted prior to the injury. * * *" (Italics ours.)

It is the claim of defendant that the illegitimate child, Meskil Bolin, is not a child of Floyd Bolin as the term is employed in paragraph 4 (B) of Section 1465-82, General Code, upon the authority of *Staker, Gdn.,* v. *Industrial Commission,* 127 Ohio St., 13, 186 N. E., 616, and further, that the child does not bear the relation of lineal descendant to its father, Floyd Bolin, and therefore, because of the last part of paragraph 4 of the section, could not be found to be a dependent of its father.

Judge Leach of the Common Pleas Court in a strong opinion held that the second proposition of the syllabus in the *Staker case* was not *stare decisis* of the question presented here, and that, giving full consideration to the broad purposes of the Workmen's Compensation Act, and to all of the language of Section 1465-82, General Code, the illegitimate child, Meskil Bolin, was a dependent of his father and entitled to share in the benefits of the act.

The second proposition of the syllabus in the *Staker case* is:

"The word 'child,' used in that section [Section 1465-82, General Code] is to be construed in its usual and ordinary sense, and applies to legitimate children and to children legally adopted prior to the employee's injury."

If this syllabus was essential to the proposition presented and decided we would readily accede to its binding force on us, but obviously it was not responsive to the narrow issue presented to the court for determination. We do not concede, on the contrary we do not believe the proposition supported, that the "usual and ordinary sense" in which the word "child" is used requires that it be given application to legitimate children only. We grant that the general rule of legal construction of the meaning of the word "child" when employed in wills or statutes includes legitimate children only, but the humanitarian purpose of the Workmen's Compensation Act, the constitutional and statutory provisions that its benefits shall be enjoyed by injured employees and the dependents of such employees who have died, and the trend of enlightened public opinion on the rights that should be accorded an illegitimate child, require the holding that "child" as used in paragraph 4 (B) of Section 1465-82, General Code, includes an illegitimate, as well as a legitimate, child.

Schneider's Workmen's Compensation Law, at page 1324, in discussing particularly the federal Workmen's Compensation Act, but also the subject of illegitimate children as affected by such acts generally, has this to say:

"Notwithstanding, then, the generally accepted view, and the numerous decisions, in support of it, referred to at the outset, it is believed that the secretary would be amply justified in holding that the children of a deceased employee, whether legitimate or illegitimate, at least if there is no reason to question the relationship, are entitled to the benefits of the compensation act. This would be no more than giving to the word 'child' its natural import. It would likewise give effect to the tendency noticeable in modern legislation, toward recognizing in illegitimates the same claims to parental care and support that belong, by natural right, to the young of any species. It would be sustained, moreover, by those authorities above cited, few in number but none the less persuasive, which announce what seems to be the more rational doctrine; and it would follow a principle of public policy which does not depend for its sanction upon the infliction of vicarious punishment on the innocent and the helpless. On the other hand, to hold, as many courts have done, that the use of the word 'child' in a statute, without any qualification indicating a restricted sense, always implies the issue of lawful wedlock, because in generations past the law regarded a bastard as *nullius filius* and heir to no one, is to adhere to a rule long after the reason for it has ceased to have point. Such an adherence to mere technicality, based on a legal fiction no longer operative, would be still less reasonable when dealing with a statute which, like the compensation act, is intended for a beneficial purpose and is expressly designed to relieve ordinary laborers and those dependent on them of the necessity of bearing the whole

burden resulting from the inevitable accidents incident to the industry in which they are employed.''

We are not certain from which one of the citations this quotation is taken, probably from *In re Claim of J. Harding,* Op. Sol. C. & L. (1915), 553, which reference is not available to us, and may be but a report of a referee. In any event, it comports with our concept of the law. Other cases are cited to support the text.

No unnecessary or improper drain on the workmen's compensation fund will result by the inclusion of an illegitimate child under 4 (B) of the section, for the reason of the prerequisite to the determination of the presumption of dependency that it further appear that the parent of such child was legally liable for its maintenance at the time of his death.

We are in accord with the opinion of Judge Leach that the question decided in the *Staker case* is essentially different from that which is before us in this case. The distinguishing differences are obvious. As a matter of fact, the *Staker case* parallels this case in one particular only, namely, that the child was an illegitimate offspring of the deceased employee, and may be supported upon the last part of Section 1465-82, General Code, if applicable, which we hereinafter discuss. It differs in these essentials: In the *Staker case* the child was posthumously born; it was unacknowledged by its putative father; it was not a child for whose maintenance its parent was legally liable at the time of his death. All of these essentials clearly appear here: The illegitimate child was born before the death of its father; it was acknowledged by the father; and he not only was legally liable for the maintenance of such child at the time of his death (Section 13008, General Code), but had been adjudged to be so liable.

The first paragraph of the syllabus in *Williamson*

*Heater Co.* v. *Radich,* 128 Ohio St., 124, 190 N. E., 403, is:

"The syllabus of. a decision of the Supreme Court of Ohio states the law of Ohio, but such pronouncement must be interpreted with reference to the facts upon which it is predicated and the questions presented to and considered by the court."

And to like effect the second paragraph of the syllabus in *B. & O. Rd. Co.* v. *Baillie,* 112 Ohio St., 567, 148 N. E., 233, reads:

"The syllabus of a decision of the Supreme Court of Ohio definitely states the law of Ohio with reference to the facts upon which it is predicated, and must be read in view of the facts found in such case."

Judge Jones, in his characteristic manner, wrote a learned and strong opinion in the *Staker case,* and it is obvious that the opinion dominated the language of the syllabus. Judge Robinson has characterized the effect of the language of the writer of an opinion, as it relates to the doctrine of *stare decisis,* in *Thackery* v. *Helfrich,* 123 Ohio St., 334, 175 N. E., 449, wherein he says (p. 336):

"Individual opinions speak the conclusions of their writer. What useful purpose they serve is an open question."

We do not purpose to prolong this opinion or to restate at length all the reasons for our conclusion that the judgment on review should be affirmed, and are satisfied in the main to adopt the opinion of Judge Leach, having some doubt only as to his interpretation of the term "lineal descendant" as found in the last part of Section 1465-82, General Code.

We approach the question here presented upon an entirely different interpretation of Section 1465-82, General Code, than heretofore considered or employed in any reported case.

Recently, in the case of *Hertz* v. *Industrial Commission*, 37 Ohio Law Abs., 53 (motion to certify overruled by the Supreme Court on June 3, 1942), we held that illegitimate children, living with their father at the time of his death, were his dependents and entitled to participate in the workmen's compensation fund. We relied in part upon the last paragraph of the section beginning, "In all other cases," etc., and determined that the illegitimate children were members of the family of the deceased employee. This conclusion could safely be reached by giving full consideration to all of the section and without any conflict in interpretation of its terms. In the *Hertz case,* we said:

"If the plaintiffs were restricted in their right to recover to the language of paragraph 4 (B), G. C. 1465-82, we would have a nice question * * *."

We now have a case in which the rights of the plaintiff are dependent upon and restricted to the presumption of dependency arising from the application of paragraph 4 (B) of Section 1465-82, General Code, which presumption, unless wiped out by the last paragraph of the section, is not lessened or affected. The facts presented in this case, if determined in favor of defendant, require either a determination that "child" as employed in paragraph 4 (B) of Section 1465-82, General Code, means a legitimate child only, or, if it be held that "child" includes an illegitimate child, then, that the presumption attending such child under 4 (B) is removed by the last paragraph of the section.

It is our judgment, first, that the word "child" as employed in 4 (B) is not limited to a legitimate child; and, secondly, that the last paragraph of the section has no application whatever to the presumptions set out in 4 (A) and (B), but, as the plain language of the paragraph states, applies only "in all other cases." It will be noted that the language which in part

it is claimed precludes the child in this case from sharing, namely, "lineal descendant," is found in the same sentence beginning "In all other cases." If the section be given the interpretation here adopted, then every word therein can be given full force and effect; otherwise, there must be read into 4 (B) the word "legitimate" modifying "child," which is done by judicial fiat, or the term "lineal descendant" must be given priority over the language of 4 (B), thereby completely annulling it.

As we stated in the *Hertz case*, 4 (A) and (B) of the section deal with presumptions of dependency only, but every intendment of 4 (B) is met by the facts in this case, namely, the child, Meskil Bolin, was under the age of 16 years at the date of the death of its parent, and the parent was, at the time of his death, legally liable for the maintenance of such child. This child comes under the class of cases mentioned in 4 (B), and such class is not affected in any particular by the last paragraph of the section beginning, "In all other cases." This is true though "lineal descendant" as used therein be restricted to legitimate children.

The application of Section 1465-82, General Code, as we have interpreted it, may be illustrated in the instant case as it relates to another illegitimate child of decedent by Annabelle Heightland, born posthumously to her father and for whom a claim was filed with the Industrial Commission and eventually disallowed. Such child, being a posthumous, illegitimate child for whose maintenance her parent was not legally liable at the time of his death, could not come under that class of cases included in 4 (B) of the section. Therefore, dependency in Annabelle Heightland's case must come under the latter part of the section beginning, "In all other cases," and upon the *Staker case* she could not qualify upon any of the provisions thereof.

Let us take a suppositional case where a deceased employee at the time of his death had a wife with whom he was not then living. She would not be entitled to the presumption appearing in 4 (A) of the section, and if entitled to any award, would be relegated to that part of the section beginning, "In all other cases." The question of her dependency would be determined in accordance with the facts and, if a strict interpretation be given to the term "lineal descendant," she could not take, unless it be found that she was a member of her husband's family.

Three cases in Ohio, among many others, *Industrial Commission* v. *Dell*, 104 Ohio St., 389, 135 N. E., 669, 34 A. L. R., 422; *State, ex rel. Person*, v. *Industrial Commission*, 126 Ohio St., 85, 183 N. E., 920; and *Musselli* v. *Industrial Commission*, 8 Ohio App., 407, illustrate the antithesis of strict construction adopted by our courts and the length to which they have gone in giving a liberal and a humanitarian interpretation favorable to injured employees and their dependents under the Workmen's Compensation Act.

In the *Dell case, supra,* the Supreme Court in an opinion written by Marshall, C. J., held that Sarah Plumsteel, the first wife of Hiram Plumsteel, the deceased employee, who survived him but died before the determination of the case, was entitled to an award. Sarah Plumsteel, at the time of the death of her husband, was not living with him and, although they were married in 1875, and seven children were born of the marriage, he had left his wife in 1904, did not again return to her and in 1915 married another woman, Maggie Berg. Plumsteel in his lifetime had made contributions to the family by his first wife, which had terminated in the year 1912 or 1913 and were not again resumed. Plumsteel not only left surviving him his widow, Sarah Plumsteel, and three surviving children, but also left Maggie Berg to whom he had been married.

Chief Justice Marshall, in discussing paragraph (A) of Section 1465-82, General Code, set forth the presumption there found that a wife is presumed to be wholly dependent for support upon a deceased employee with whom she lives at the time of his death and points out that Sarah Plumsteel was not living with her husband at the time of his death, nor for fourteen years prior thereto, that she had been receiving no support from him for four or five years, and that, in accord with our theory of the section, the question of her dependency would have to be determined by the latter part of the section beginning, "In all other cases," etc. The Chief Justice then determined that, under the facts appearing, Sarah Plumsteel was a member of the family of Hiram Plumsteel, as of the date of the injury resulting in his death, and stresses the fact that she was dependent upon him though in fact she had received no support whatever from him for years prior to his death.

In *State, ex rel. Person,* v. *Industrial Commission, supra,* Edmond Person, an injured employee, was granted an award for total disability resulting from an injury suffered on November 3, 1925. The award made in November 1927, covered a period from January 4, 1927, to December 31, 1927, but Person before receiving the award died and Charlotte Person, his widow, filed her application for compensation with the commission which was denied upon the ground that proof failed to show any dependency. The claim of the commission was that, at the time relator married Edmond Person, in January, 1927, he was totally disabled and then, and at all times thereafter, was unable to and did not provide any support whatever for his wife. In the trial in the Common Pleas Court, jury being waived, judgment was entered for the plaintiff and no error proceedings were prosecuted by the commission. Thereafter, an action, to mandamus the com-

mission, was instituted in the Supreme Court and there the court, Judge Allen writing the opinion, granted the writ. Judge Allen sets forth and discusses paragraph (A) of Section 1465-82, General Code, and the latter part of the section and attention is directed to the fact that the relator falls specifically within the provisions of the presumption of the statute. At page 89 of the opinion it is said:

"It is true that this case presents an extreme illustration of the application of the law as to dependency in these cases. The wife was not supported by her husband, who was totally disabled during the entire time of the marriage. However, under the Workmen's Compensation Act, dependency is based upon the right to support, rather than upon the actual fact of support." Citing *Industrial Commission* v. *Drake,* 103 Ohio St., 628, 134 N. E., 465.

The foregoing authorities are also especially applicable to the instant case because of the fact that the record here does not disclose whether Floyd Bolin complied with the order of the court that he pay $2.50 per week for the support of Meskil Bolin. It is also doubtful if the court had any right to make such an award, if the proceedings were had under the bastardy statute, but the obligation of a father to support an illegitimate child with necessary or proper home care, food and clothing, clearly appears by Section 13008, General Code, which makes it an offense for the parent to fail to observe this obligation.

In *Musselli* v. *Industrial Commission, supra,* the court held that a legal wife of a deceased employee, living in Italy at the time of the injury and death of the employee, was entitled to an award under the Workmen's Compensation Act. It is obvious that in no one of the aforesaid cited cases could the widow of the deceased employee have been found to be a lineal descendant, in the strict sense of the term, of her hus-

band. If a wife, living permanently in Italy, may be said to be a member of the family of her husband, living in the United States, it would be no perversion to hold that Meskil Bolin was a member of the family of his father.

In the *Dell case* and the *Musselli case* the court resorted to that part of Section 1465-82, General Code, beginning, "In all other cases," etc. It is inferable that if, in either of them, the wife had come squarely under (A) of the section the court would have gone no further and would not have denied the right to an award because the wife was not a lineal descendant. This latter provision of the section has application only in cases other than those especially covered by (A) and (B).

We have not discussed the effect of the failure of defendant to prosecute error from the award to Meskil Bolin, nor the effect of the subsequent agreement to which it was a party, because the parties have not mentioned it.

The judgment will be affirmed.

*Judgment affirmed.*

BARNES, P. J., concurs.
GEIGER, J., dissents.

GEIGER, J., dissenting. I am unable to concur in the opinion of my associates.

Hornbeck, J., speaking for the majority, has correctly set out the facts involved in this matter.

The sole question in this court is whether the court below erred in requiring the defendant to pay a part of the award to Meskil, an illegitimate child, after the decedent had admitted in open court his paternity, and after the court before whom the proceedings had been

brought had ordered the decedent to pay $2.50 per week for the support of the child.

In *Staker, Gdn.,* v. *Industrial Commission,* 127 Ohio St., 13, 186 N. E., 616, it is held:

"1. An illegitimate, posthumous child, unacknowledged by its putative father, is not a dependent child, within the purview of Section 1465-82, General Code.

"2. The word 'child,' used in that section, is to be. construed in its usual and ordinary sense, and applies to legitimate children and to children legally adopted prior to the employee's injury."

The court below, as well as the majority of this court, considered *Staker* v. *Industrial Commission of Ohio, supra,* and point to the fact that the Supreme Court has held that the syllabus states the law of Ohio only with reference to facts upon which it is predicated and must be read in view of the facts found in such case.

There are numerous cases asserting this principle, but I refer to only three. *B. & O. Rd. Co.* v. *Baillie,* 112 Ohio St., 567, 148 N. E., 233; *Thackery* v. *Helfrich,* 123 Ohio St., 334, 175 N. E., 449; and *Williamson Heater Co.* v. *Radich,* 128 Ohio St., 124, 190 N. E., 403.

None of those cases is very instructive as to just when and under what circumstances the syllabi of the Supreme Court may be disregarded. It is true that they state in effect that the syllabus states the law with reference to the facts upon which it is predicated, and must be read in view of the facts found. While this is undoubtedly true, I am loath to resort to this device, for it seems to me that the Supreme Court in the *Staker case* has definitely considered facts upon which the syllabus is predicated. It seems to be conceded, both by the trial court and the majority, that unless the syllabus of the decision in the *Staker case* is not predicated upon the facts considered and unless such

syllabus is, therefore, not the law of Ohio, the decision is controlling in this case.

To determine whether *Staker, Gdn.,* v. *Industrial Commission,* definitely states the law of Ohio with reference to the facts upon which it is predicated, I need but refer to the statement by Judge Jones of the matter then before the court. The facts stated by .Judge Jones are identical with the facts in this case in reference to illegitimate child No. 2, even to the number of days such illegitimate child was conceived before the death of the father.

Jones, J., after stating the facts, says:

"The sole question to be determined is whether an illegitimate, posthumous child, unacknowledged by its father, should be construed to be a dependent and entitled to compensation under the Ohio Workmen's Compensation Law."

It is asserted by the majority that the question there under consideration was whether a *posthumous* child, *unacknowledged* by the father should be construed to be a dependent under the compensation law, whereas the case here to be determined is whether a child born before the death of its parent and acknowledged by him is entitled to compensation, irrespective of the fact that it is an admitted illegitimate child whose parents have not married and acknowledged the child, and who has not lived with the father.

I am of the opinion that the facts that the child in the *Staker case* was not born at the time of the death of the father and was not acknowledged by him do not so distinguish it from the case at bar as to require us to discard the principles laid down in the *Staker case.* That case is of such vital importance that it must be read carefully, and there are certain high spots that may be alluded to.

Jones, J., examined cases from other states on the same subject matter and pointed out with approval

that in Illinois the Supreme Court held the word "child" or "children" means legitimate children and will not be extended by implication to embrace illegitimate children unless such construction is necessary to carry into effect the manifest purpose of the Legislature.

He also referred to *Creisar* v. *State,* 97 Ohio St., 16, 119 N. E., 128, and alluded to a Maryland case in which the word "child" as used in the Workmen's Compensation Act is held to mean legitimate child or legitimate children of the employee.

See *Bell* v. *Terry & Tench Co.,* 163 N. Y. Supp., 733, 177 App. Div., 123. The compensation law of that state providing that a " 'child' shall include a posthumous child and a child legally adopted prior to the injury of the employee," must be understood to have excluded illegitimate children.

Jones, J., in *Staker, Gdn.* v. *Industrial Commission,* stated at page 16:

"We have searched in vain for a case, and counsel for plaintiff in error have pointed out none, where an illegitimate child has received compensation under the Workmen's Compensation Act under circumstances similar to those detailed in the amended petition."

"Since the term 'illegitimate' is not found in Section 1465-82, General Code, the word 'child' used therein connotes legitimate children; and the term 'lineal descendant' implies a descendible relation that is legitimate."

The court alluded to Section 8591, General Code, and said at page 17:

"Considering these statutes pertaining to legitimacy and adoption we think it is obvious that in Section 1465-82, General Code, the Legislature intended to use the word 'child' in its usual and ordinary sense, and that so used it applies to children of an employee who are legitimate and to children who have been le-

gally adopted prior to the injury; it certainly does not apply to an illegitimate, posthumous child, who has not been legitimized in the manner provided by Section ·8591, General Code.''

In *Creisar* v. *State, supra,* it is held that the term ''minor'' found in former Section 1655, General Code, should receive its ordinary legal significance and so construed embraces only minor children who are legitimate. The Juvenile Court has no authority to punish the father of an illegitimate child *unless its paternity has been acknowledged after intermarriage* in conformity with Section 8591, General Code.

On page 18, it is stated: ''Unless such terms have been so enlarged as to include illegitimate offspring, they have invariably been held as applicable only to children born in lawful wedlock.'' While the syllabus of this case refers only to Section 1655, General Code, in the body of the opinion it discusses Sections 13008 and 13009, General Code.

The majority has alluded to the fact that the general purpose of the Legislature should be regarded and that inasmuch as the object of the legislation was the protection of dependent children, there should be a broad interpretation of the statute in order to bring within its terms illegitimate children. I admit that there are certain principles that may invite concurrence in the majority view.

This argument based upon the legislative intent is a fair one, but evidently must be controlled not only by the terms of the statute itself, but by decisions of the court touching such matters. In *Welsh* v. *Industrial Commission,* 136 Ohio St., 387, 26 N. E. (2d), 198, the court holds that compensation authorized by the Constitution and provided by the laws enacted in pursuance thereto, is for injured employees and their *dependents.* The compensation fund is created for such purpose and its disbursement to other than in-

jured employees and their dependents is unauthorized.

In *Industrial Commission* v. *Drake,* 103 Ohio St., 628, 134 N. E., 465, the court through Marshall, C. J., at page 636, says:

"It is not a pension or a bounty or charity, but in the strictest sense a mutual insurance in which benefits are payable out of a fund created by contributions from a large number of possible beneficiaries. \* \* \*

"It is therefore very necessary that trial courts and juries, as well as the Industrial Commission, shall exercise the utmost caution and care in making awards of compensation."

I may sum up, in conclusion, to the effect that I feel that the majority has gone far astray to search for reasons why they should not follow either the statute or the decisions of our Supreme Court in interpretation thereof, apparently because they are not satisfied that the Supreme Court is right. The majority is at great length in quoting certain cases showing the length to which the court has gone in giving a liberal and humanitarian construction favorable to injured employees and their dependents under the Workmen's Compensation Act, quoting *Industrial Commission* v. *Dell,* 104 Ohio St., 389, 135 N. E., 669, 34 A. L. R., 422; *State, ex rel.,* v. *Industrial Commission,* 126 Ohio St., 85, 183 N. E., 920, and *Musselli* v. *Industrial Commission,* 8 Ohio App., 407.

I have examined those cases and am unable to see their force in grounding a decision upon inferences rather remote from the case at bar, instead of upon the statute and decisions of the Supreme Court which I hold are directly in point. The majority has also indulged in the alluring but not convincing device of attempting to illustrate by suppositional cases which would lead to favorable support of the position taken by them. I do not feel that in a case where we have the statute and a plain decision of the Supreme Court we

have any right to indulge in illustrations and suppositious cases that seem rather far afield from the case at bar.

This matter does not involve great sums of money. I am in sympathy with the young person who needs the money, but I do not feel that we should go to the point of disregarding the plain import of decisions of the highest court on the ground that, as stated by Weygandt, C. J., in *Williamson Heater Co.* v. *Radich, supra,* at page 126, "when obiter *creeps* into a syllabus it must be so recognized and so considered." It does not occur to me that there had been any "creeping" in the case of *Staker, Gdn.,* v. *Industrial Commission.* When that case was decided the judges were alert as to what was being said and no claim was asserted that Judge Jones was going outside of the record in the determination of the case.

Much has been made of the argument addressed to our sympathies that an innocent bastard child should not be deprived of compensation, especially so long as he has been acknowledged by his father, and the court has made a ruling requiring the father to pay. There is no claim made for or defense of bastard No. 2 who was *en ventre sa mere.* It was just as innocent as was its co-bastard and I see no reason for making a distinction between them as to the right to compensation for the father's death, simply due to the accident that bastard No. 1 was born a year before the death of the father, while bastard No. 2 was born nearly nine months after the death. If there is any concession to be made in the case of bastard No. 1, then there should be a like concession in case of bastard No. 2. The distinction between the two as made by the majority is is that one was acknowledged by the father during his lifetime but without intermarriage with the mother, and the other, of course, was not acknowledged.

Since the decision of the court in the *Staker case* there have been two other cases decided which may throw light upon the proper interpretation of the *Staker case* insofar as it relates to the case at bar.

*Welsh* v. *Industrial Commission, supra,* involved a dependency claim based upon the accidental death of one Jack Welsh.

This case possibly does not closely approach the facts of the case at bar, but is worthy of reading.

*Garner, Gdn.,* v. *B. F. Goodrich Co.,* 136 Ohio St., 397, 26 N. E. (2d), 203, relates to a claim of dependency on behalf of an alleged posthumous, illegitimate child of the decedent. The claim was disallowed by the commission for failure to show that the claimant was a person dependent under the provisions of the Workmen's Compensation Act.

The court refers to the *Staker case,* stating that it involved a claim for compensation for a posthumous child which was concededly an illegitimate child unacknowledged by its father, and says that the court in that case found that the word "child" applies to legitimate children and to children legally adopted prior to the employee's injury. The court then quotes Section 10503-15, General Code, to the effect that when a man by a woman has one or more children and afterwards intermarries with her, such issue if acknowledged by him as his child or children will be legitimate. The issue of parents whose marriage is null in law shall nevertheless be legitimate. The court also quotes from Judge Jones in the *Staker case* and approves the conclusion of the Court of Appeals that the claimant is entitled to participate in the workmen's compensation fund. The decision of the Supreme Court in that case was clearly based upon the fact that the man and woman were married, and the unborn child was acknowledged by him and the "stamp of illegitimacy" was thus removed from the child, and it thereupon became

a dependent entitled to participate. In the case at bar there was no marriage of the parents and the "stamp of illegitimacy" still remained and under the statute the child is not a dependent and is not entitled to participate.

None of the dissenting or concurring judges in the last two cases gave any hint that in their judgment the syllabus in the *Staker case* was not based upon facts presented to that court.

Inasmuch as I have relied upon the *Staker case* I cite these later cases, which, in my judgment, strengthen its authority.