## BONEWIT v. WEBER.

Common Pleas Court, Summit County.

No. 163777.   Decided April 22, 1952.

Carl Myers, Akron, for plaintiff.
James Olds, Akron, for defendant.

### OPINION

By WATTERS, J.

The question before us is whether the child in question born to one Julia Malazo eight and one-half months after the accident in question, and whose claimed father, Roy Bonewit, died one week after said accident and from injuries sustained therein, is to be considered as a child and therefore a beneficiary or dependent in the instant wrongful death case grow-

ing out of the death of said Roy Bonewit. Bonewit did not marry the mother, but it is claimed that the child was acknowledged by him.

### The Law

In **Muhls, Adm'r, v. Michigan Southern Railway, 1859, 10 Oh St 272**, while the 1851 wrongful death statute was in effect, the court held the fact that the son, beneficiary, was illegitimate, was immaterial, and could not affect the right of the child as a dependent. There, however, the person killed, the deceased, was the son's father, and an illegitimate child has always inherited through its mother and vice versa. **Staker, Guardian, v. Industrial Commission of Ohio, 1913, 127 Oh St 13, 186 N. E. 616.**

Syllabus (1) "An illegitimate, posthumous child, unacknowledged by its putative father, is not a dependent child, within the purview of **1465-82 GC**." Workmen's Compensation Act.

(2) "The word 'child,' used in that section, is to be construed in its usual and ordinary sense, and applies to legitimate children and to children legally adopted prior to the employee's injury."

The court refers to §8591 GC, then, §10503-15 GC, now, discussed later in **Garner v. B. F. Goodrich Co., 136 Oh St 397, 26 N. E. 2d 203.**

In **Ransom, Adm'r v. New York City Ry. Co., 1915, 93 Oh St 223, 112 N. E. 586, L. R. A. 1916E, 704**, the court held that in the wrongful death statute of Ohio, the words "parents" and "children" included adopting parents and adopted children as well as natural parents and natural children. **Garner v. B. F. Goodrich Co. 1940, 136 Oh St 397, 26 N. E. 2d 203.**

Syllabus (2) "Under the provisions of §10503-15 GC, 'When by a woman a man has one or more children, and afterward intermarries with her, such issue, if acknowledged by him as his child or children, will be legitimate. The issue of parents whose marriage is null in law, shall nevertheless be legitimate."

This statute removes the sting of illegitimacy from a child whose father acknowledges it and intermarries with its mother either before or after the birth of the child. Such issue is the legitimate child of the father within the purview of the Workmen's Compensation Act, **though the death of the father occurred two weeks prior to the birth of the child.** (Emphasis by the court.)

The evidence showed that at the wedding Garner knew that his bride to be was pregnant and openly acknowledged the child to be, as his. Showers were given for the baby to be, and Garner married the mother. The court remarked that **"the * * * acknowledgment * * * was notorious and certain [,and] the immutable laws of gestation were in harmonious**

operation with respect to actions and time." (Emphasis by the court.) **State ex rel. Herbert, Atty. Genl., v. Hocking Valley Mining Co.,** 1943, 73 Oh Ap, 483, 57 N. E. 2d 236.

Syllabus (1) "The word 'child' as used in §1465-82, paragraph ■ **(B), GC,** prescribing the persons to whom death benefits under the Workmen's Compensation Act shall be paid, includes an illegitimate child."

The child was illegitimate, and **was born before the death** of the employee (father) who had pleaded guilty to being the child's father, and who had been ordered by the court to support said child. The child had never lived with such father during the father's lifetime.

**Sec. 10509-167 GC** states in part:

"An action for wrongful death * * * shall be for the exclusive benefit of the surviving spouse, the children and other next of kin of the decedent."

In the instant case the child was born after the death of the father, in fact some eight and a half months thereafter. I hold it against public policy, where there has been no recognition or acknowledgment of the unborn child by the so-called putative father before his death, to put the cloud on him in a wrongful death action, when he is not in being to defend himself. However I hold that if it can be shown by proper court finding during his lifetime that he is the father, or that the father has recognized or acknowledged the child after its birth or before to be his, during his (the father's) lifetime, then the child should be considered a dependent under the wrongful death statute or otherwise.

In passing as to proper and conclusive court findings as to whether a given deceased is the father of an illegitimate child, the recent Supreme Court case of **State v. Snyder, 157 Oh St 15,** 104 N. E. 2d. 169, poses much confusion. Also a "conviction" of the man in bastardy would not be conclusive.

The evidence in this case in the court's opinion, on the subject of the deceased's claimed recognition or acknowledgment of the unborn child, is weak and unconvincing, and does not sustain the plaintiff's claim.

Julia Malazo, the mother of the boy, on page 36 of the transcript, testified as follows:

"The Court: When did you first know you were pregnant? Answer. The first week in October."

On page 37 she said "By the 5th of October, I knew."

She testified (page 37) that she never consulted a doctor in regard to pregnancy until in November of 1946, about three months after she claims she thought she was pregnant, although she admits she was seeing the same doctor about the

522

injuries she received in the accident which occurred October 11, 1946.

On page 40 Julia testified that she first told Roy Bonewit that she was pregnant the first week of October on a Friday. Later she fixed it at a week before the accident, which would make it October 4, 1946.

The record shows that the child was born June 26, 1947, which would be eight months and twenty-two days after October 4, 1946, the day she told Roy Bonewit.

Royal Close (witness) says on page 18 that Roy Bonewit first told him that he had Julia pregnant about one month before the accident. That would figure out September 11, 1946, as the accident happened October 11, 1946. September 11, 1946, would obviously be long before she knew she was pregnant and long before she told Roy.

Mrs. Grace Kozar, Roy Bonewit's sister (top page 5), testified that he visited her in Canton about one week before the accident and said nothing about the pregnancy. It is strange if he was telling the world that he wouldn't tell his sister.

Mrs. Katherine Close, half sister of Julia Malazo (page 8), testified that Roy Bonewit borrowed five dollars from her husband to have a blood test in re marriage about a week before the accident. This doesn't make sense, because Roy Bonewit didn't know it, according to Julia (of pregnancy). Later on page 10 she testified that Roy told her of the pregnancy about two weeks before the accident.

**Page 29** Mrs. Leona Elizabeth Collins, the former wife of Roy Bonewit, testified that before the date of her (Mrs. Collins) remarriage, which was September 5, 1946, Bonewit had told her (two weeks before September 5, 1946) that he had her pregnant and it was his baby, etc. It will be noted that this was supposed to be said by Bonewit some time before September 5, 1946, while the mother of the baby, Julia Malazo, says she did not tell Roy Bonewit until October 4, 1946.

On page 29 (bottom) the court asked Mrs. Collins:

"When was that conversation? A. I don't know when it was."

"The Court: How long before your marriage? (Sept. 5, 1946) A. Not too long, about two weeks."

The evidence of the plaintiff does not in the court's opinion even raise an inference that the child in question was recognized and acknowledged by Roy Bonewit as his child. In the first place I cannot believe Julia Malazo could have known or suspected she was pregnant by October 5, 1946, the date she says she told Roy Bonewit she was. It is unreasonable to believe that even had she so believed and so told Roy, that he

would go around telling the world. That is not human nature. That is, they would both keep mum and say nothing until a doctor had passed his opinion, and then they would have made arrangements accordingly, got married, etc.

The evidence is beyond the realm of probability and most of it is entirely unreliable as pointed out in some detail above.

The court rules that the plaintiff has failed to show any acknowledgment of the unborn child as his, during his (the deceased's) lifetime, and that therefore the child cannot be considered as a dependent in this wrongful death case under the statute.

Journal entry will be drawn accordingly with exceptions. Costs to follow the case proper.