PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2085
_____

In Re: NATIONAL FOOTBALL LEAGUE PLAYERS'
CONCUSSION INJURY LITIGATION

*Melvin Aldridge; Patrise Alexander; Charlie Anderson;
Charles E. Arbuckle; Cassandra Bailey, Individually and as
the Representative of the Estate of Johnny Bailey; Rod
Bernstine; Reatha Brown, Individually and as the
Representative of the Estate of Aaron Brown, Jr.; Curtis
Ceasar, Jr.; Larry Centers; Trevor Cobb; Darrell Colbert;
Elbert Crawford III; Christopher Crooms; Gary Cutsinger;
Jerry W. Davis; Tim Denton; Leland C. Douglas, Jr.; Michael
Dumas; Corris Ervin; Robert Evans; Doak Field; James
Francis; Baldwin Malcolm Frank; Derrick Frazier; Murray E.
Garrett; Clyde P. Glosson; Anthony Guillory; Roderick W.
Harris; Wilmer K. Hicks, Jr.; Patrick Jackson; Fulton
Johnson; Richard Johnson; Gary Jones; Eric Kelly; Patsy
Lewis, Individually and as the Representative of the Estate of
Mark Lewis; Ryan McCoy; Emanuel McNeil; Gerald
McNeil; Jerry James Moses, Jr.; Anthony E.
Newsom; Winslow Oliver; John Owens; Robert Pollard;
Derrick Pope; Jimmy Robinson; Thomas Sanders; Todd
Scott; Nilo Silvan; Matthew Sinclair; Dwight A. Scales;
Richard A. Siler; Frankie Smith; Eric J. Swann; Anthony
Toney; Herbert E. Williams; James Williams, Jr.; Butch

Woolfolk; Keith Woodside; Milton Wynn; James A. Young, Sr.,

Appellants

*(Pursuant to Rule 12(a), Fed. R. App. P.)

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-12-md-02323)
District Judge: Honorable Anita B. Brody

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 14, 2020

_____

Before: JORDAN, GREENAWAY, JR., and KRAUSE,
*Circuit Judges*.

(Opinion Filed: June 12, 2020)

Charles L. Becker
Kline & Specter
1525 Locust Street
19th Floor
Philadelphia, PA 19102

Lance H. Lubel
Adam Q. Voyles
Justin R. Goodman
Lubel Voyles LLP

675 Bering Drive
Suite 850
Houston, TX 77057

Mickey Washington
Washington & Associates
1314 Texas Ave.
Houston, TX 77002

James Carlos Canady
The Canady Law Firm
2323 South Shepherd Drive
Suite 805
Houston, TX 77019
  *Attorneys for Appellants*

Scott A. George
Seeger Weiss
1515 Market Street
Suite 1380
Philadelphia, PA 19102

Samuel Issacharoff
New York University Law School
40 Washington Square South
New York, NY 10012

Diogenes P. Kekatos
Seeger Weiss
77 Water Street
8th Floor
New York, NY 10005

Christopher A. Seeger
Seeger Weiss
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
        *Counsel for the Settlement Class*

Brad S. Karp
Bruce A. Birenboim
Lynn B. Bayard
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
        *Attorneys for Appellees*

Orran L. Brown, Sr.
BrownGreer PLC
250 Rocketts Way
Richmond, VA 23231
        *Attorney for Non-Party Appellee Claims Administrator*

_____

OPINION

_____


GREENAWAY, JR., *Circuit Judge*.

Football is a beloved American pastime; however, experts have found that professional football players are at a significantly increased risk for serious brain injury. This lawsuit is the latest in a series of actions related to a settlement agreement (the

4

"Settlement Agreement"), which seeks to address the claims of former players who believe they suffered brain damage while playing football. Specifically, the Settlement Agreement is between the National Football League ("NFL") and a subsidiary on one hand and specified, eligible retired NFL players, respective claimants, and derivative claimants on the other. The purpose of the Settlement Agreement is to provide monetary awards to former players who receive a qualifying diagnosis after following the necessary protocol outlined in the Settlement Agreement.

Relevant to this appeal, the Settlement Agreement's claims administrator (the "Claims Administrator") and the District Court, respectively, created and adopted a set of clarifying, revised rules relating to the "successful operation" of a specific aspect of the monetary award program created by the Settlement Agreement. A2. Appellants Melvin Aldridge and 59 other retired NFL players or their estates ("Appellants") appeal the District Court's orders dated April 11, 2019, and May 16, 2019 (collectively, the "Orders"), which adopted and implemented the revised rules devised by the Claims Administrator.

Appellants are concerned with four of those revised rules, arguing that (1) the revised rules amended the Settlement Agreement, and (2) alternatively, if the revised rules did not amend the Settlement Agreement, the District Court abused its discretion by adopting the four revised rules.[1] Defendants-

---

[1] Specifically, Appellants are concerned with revised rules 9, 10(b), 13(k), and 23. *See infra* footnote 9 (discussing the rules in more detail). These four rules were all either additions to or revisions of previously promulgated and adopted rules clarifying an aspect of the Settlement Agreement. *See* Quick

5

Appellees National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc. (collectively "NFL-Appellees" or "Defendants"), and Appellee BrownGreer PLC, the District Court-appointed Claims Administrator, believe the District Court's Orders were correct. For the reasons set forth below, we will affirm the Orders of the District Court.

---

Reference Guide: Qualified MAF Physician Rules, *In re: National Football League Players' Concussion Injury Litigation* No. 2:12-md-02323 (E.D. Pa.), https://www.nflconcussionsettlement.com/Docs/Rules_Qualified_MAF_Physicians.pdf (last visited June 12, 2020) (explaining that Revised Rules 9 and 23 are additions, that Revised Rule 10(b) was a partial addition, and that Revised Rule 13(k) was a revision). Herein, they will all be referred to as "Revised Rules."

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Settlement Agreement and the Rules Governing Qualified Monetary Award Fund Physicians[2]

The Settlement Agreement at the heart of this case resolved a class action lawsuit brought by former NFL players. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 821 F.3d 410, 420–25 (3d Cir. 2016), *as amended* (May 2, 2016) (explaining the origin of the concussion lawsuits, providing background on the Settlement Agreement, and affirming the District Court's class certification and approval of the Settlement Agreement); *see also In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96, 101 (3d Cir. 2019) ("Under the settlement agreement, approximately 200,000 class members gave up their claims in exchange for potential proceeds from an uncapped settlement fund."). The

[2] For reference, and discussed below, a qualified monetary award fund physician ("Qualified MAF Physician") is, as defined by the Settlement Agreement, "a board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physician, who is part of an approved list of physicians authorized to make" specific diagnoses on eligible retired NFL players seeking a monetary award under the Settlement Agreement. A729. Per the Settlement Agreement, an eligible, retired NFL player who seeks a monetary award, for injuries sustained while playing football for the NFL, must have a qualifying diagnosis from a pre-approved physician. "The Qualified MAF Physicians across the country . . . perform a crucial role in carrying out the Settlement Program in examining Retired NFL Football Players to determine if they have" any of the qualifying diagnoses. A1157.

7

crux of the matter before us centers on whether the District Court erroneously interpreted the Settlement Agreement by finding that the Revised Rules were not amendments, or, if the interpretation was sound and there were no amendments, whether the District Court abused its discretion in adopting and approving the Revised Rules governing qualified monetary award fund physicians ("Qualified MAF Physicians") promulgated by the Claims Administrator. As we work through this issue, three matters provide the critical backdrop for our analysis: (1) the District Court's continuing jurisdiction and role regarding the Settlement Agreement, (2) the Settlement Agreement's program for submitting claims and obtaining a monetary award, and (3) the Claims Administrator's role and duties.

First, Article XXVII of the Settlement Agreement focuses on jurisdiction, and is aptly titled "Continuing Jurisdiction." A807. It details the District Court's "continuing and exclusive jurisdiction over" the Settlement Agreement's "interpretation, implementation, administration, and enforcement." *Id.* Specifically, it explains that the parties to the Settlement Agreement, including "each Settlement Class Member, are hereby deemed to have submitted to the exclusive jurisdiction of [the District] Court for any suit, action, proceeding or dispute arising out of, or relating to, this Settlement Agreement." *Id.*

Second, as we have already explained, the Settlement Agreement establishes that former players must have a qualifying diagnosis to be eligible for a monetary award pursuant to the Settlement Agreement. *See In re Nat'l Football League*, 923 F.3d at 101 ("In order to receive an award [per the Settlement Agreement], a class member must first submit a claim package including medical records reflecting a

8

qualifying diagnosis, among other things.").[3]  Other than for death with CTE, a player may obtain a qualifying diagnosis necessary for a successful claim package from a Qualified MAF Physician.[4]  A Qualified MAF Physician can provide a diagnosis on a Level 1.5 neurocognitive impairment, a Level 2 neurocognitive impairment, Alzheimer's disease, Parkinson's disease, and ALS.  Further, a Qualified MAF Physician's diagnosis of Level 1.5 and Level 2 neurocognitive impairment is to be "generally consistent" with the Baseline Assessment

---

[3] There are six potential qualifying diagnoses: (1) Level 1.5 neurocognitive impairment, (2) Level 2 neurocognitive impairment, (3) Alzheimer's disease, (4) Parkinson's disease, (5) death with chronic traumatic encephalopathy ("CTE"), and (6) Amyotrophic Lateral Sclerosis ("ALS").

[4] The Qualified MAF Physicians are chosen by the Claims Administrator and must be approved by class counsel and counsel for the NFL.  Of note, "91% of the [eligible retired NFL players] . . . live within 150 miles of one or more Qualified MAF Physicians."  A1158.  Further, and alternatively, though not specifically relevant here, an eligible, retired player could, in some instances, seek to obtain a qualifying diagnosis of either a Level 1.5 neurocognitive impairment or a Level 2 neurocognitive impairment from a Baseline Assessment Program ("BAP") provider.  *See In re Nat'l Football League*, 923 F.3d at 101 (explaining that players "without a diagnosis prior to January 7, 2017, were required to receive a diagnosis from a practitioner approved through the settlement Baseline Assessment Program (BAP).").  Qualified BAP Provider-diagnoses were to be made in accordance with the Settlement Agreement's criteria.

Program ("BAP") diagnostic criteria as set forth in the Settlement Agreement.[5] If a player receives a qualifying diagnosis and submits a claim package, the claim package is then reviewed by the Claims Administrator who determines the player's monetary award. *See id.* (explaining that the Claims Administrator reviews a claim package "for deficiencies, investigates . . . claim[s] as appropriate, and . . . [determines] whether the class member qualifies for a monetary award. Either the class member or the NFL can then appeal the monetary award determination. Only after any appeals are completed does the Claims Administrator pay out the individual's award.").

Third, in addition to defining the Claims Administrator, the Settlement Agreement sets forth numerous duties for the Claims Administrator to perform.[6] For example, as mentioned, the Claims Administrator processes and reviews claim packages. The Claims Administrator also must "take all steps necessary to faithfully implement and administer the

---

[5] The BAP diagnostic criteria for Level 1.5 and Level 2 neurocognitive impairment are generalized guidelines regarding what a diagnosis must include and consider, such as: "The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects." A819.

[6] The Claims Administrator is defined as: "that person(s) or entity, agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, to perform the responsibilities assigned to the Claims Administrator under this Settlement Agreement, including, without limitation, as set forth in Section 10.2." A722. As noted, BrownGreer PLC is the Claims Administrator.

Settlement Agreement," A768, and must "establish and implement procedures to detect and prevent fraudulent submissions to, and payments of fraudulent claims from, the Monetary Award Fund," A770. Indeed, the Claims Administrator "will also establish system-wide processes to detect and prevent fraud, including, without limitation, claims processing quality training and review and data analytics to spot 'red flags' of fraud, including . . . the number of claims from similar addresses or supported by the same physician or office of physicians[.]" A774

Given these duties, the Claims Administrator is obligated, should there be a need, to promulgate rules at various times regarding the proper administration of the Settlement Agreement. *See, e.g.*, A1158–59 (explaining the promulgation, in 2018, of 16 rules governing Qualified MAF Physicians, "covering various aspects of physician enrollment and training, submission of appointment and diagnosis information, ethical requirements and suspension and termination" (herein called, the "Rules Governing Qualified MAF Physicians")); *see also Governing Rules*, NFL Concussion Settlement, https://www.nflconcussionsettlement.com/Governing_Rules.aspx (last visited June 12, 2020) (outlining sets of rules governing the Settlement Program generally).[7]

---

[7] Appellants did not appeal the Rules Governing Qualified MAF Physicians when they were originally promulgated and adopted, respectively, by the Claims Administrator and the District Court.

11

**B.    The District Court and the Revised Rules Governing Qualified MAF Physicians**

Following a directive from the District Court, the Claims Administrator developed, for review and approval, clarifications and revisions regarding the already existing Rules Governing Qualified MAF Physicians.[8]    Thus—to "[i]mplement[] the [District] Court's . . . [directive] and [in an] effort[] to promote the successful operation of the network of Qualified MAF Physicians"—the Revised Rules Governing Qualified MAF Physicians (a/k/a the "Revised Rules") were developed.  A1159.

Where the original Rules Governing Qualified MAF Physicians sought to provide "greater clarity . . . to all participants," A1157, the goal of the Revised Rules was "to help [the] Program deliver benefits quickly and correctly to Settlement Class Members who deserve them," A1159.  Specifically, the Revised Rules sought to: (1) provide clear guidance to Qualified MAF Physicians, (2) reduce processing delays, (3) help the program run efficiently, (4) further the fairness of the program, and (5) get the medicine right.  *See* A1159–60.  The District Court approved and adopted the

---

[8] The District Court explained that after reviewing exhibits submitted by parties in a separate but still related to the Settlement Agreement-appeal, "a number of reports and certifications submitted by Qualified MAF Physicians . . . failed to set forth the doctor's analysis as to why the diagnosis of Level 1.5 Neurocognitive Impairment . . . or Level 2 Neurocognitive Impairment . . . was 'generally consistent' with the BAP diagnostic criteria."  A1060.

Revised Rules on April 11, 2019 (*i.e.*, the "April 11 Order"). *See* A2.

The Revised Rules added an additional nine rules/revisions to the previously created and approved Rules Governing Qualified MAF Physicians—the original rules are not the subject of this appeal and were not contested by the Appellants in this case.

Relevant to this appeal are four of the nine rules: Revised Rule 9, Revised Rule 10(b), Revised Rule 13(k), and Revised Rule 23.[9]   Additionally, while former-Co-Lead Class Counsel and

---

[9] Generally, with exceptions provided, Rule 9 is the "150-Mile Rule for MAF Examinations," requiring a player to see a Qualified MAF Physician located within 150 miles of the player's primary residence.  A8.  Rule 10(b), again with exceptions provided, concerns the "50-Mile Rule for Examining Neuropsychologists" that requires a neuropsychologist assisting a Qualified MAF Physician to be located within 50 miles of the Qualified MAF Physician's office.  A9.  Rule 13(k), a sub-rule under "Avoidance of Questionable Practices," prevents a Qualified MAF Physician from examining or diagnosing a player who is "represented by a lawyer or law firm for whom or for which the Qualified MAF Physician provides services as a consulting or testifying expert witness."  A10–11.  And Rule 23 falls under the general category pertaining to "Assistance by the Claims Administrator" and relates to the "[Appeals Advisory Panel ("AAP")] Leadership Council."  A13–14; *see also* A721 (defining, in § 2.1(g) of the Settlement Agreement, the AAP). Rule 23 articulates the type of work the AAP Members can assist with and who may appoint the AAP Members.  *See* A14 ("Two AAP Members serve as the Claims Administrator's

13

Class Counsel filed a Motion for Reconsideration of the April 11 Order adopting the Revised Rules, they did not file appeals after the District Court denied their Motion for Reconsideration on May 16, 2019 (*i.e.*, the "May 16 Order"). Thus, Appellants in this case—members of the class—are appealing the District Court's Orders.[10] Appellants' Notices of Appeal were timely.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, *see In re Nat'l Football League*, 775 F.3d 570, 574 (3d Cir. 2014), and it retained jurisdiction over the administration of the Settlement Agreement, *see, e.g.*, *In re Nat'l Football League.*, 923 F.3d at 109 ("Pursuant to the settlement agreement and the District Court order approving and adopting the agreement, the District Court retained the authority to enforce the terms of, and administer, the

---

AAP Leadership Counsel to provide the Claims Administrator advice and assistance on any medical issues arising in the monitoring of the work of Qualified MAF Physicians. This includes review of specific claims or groups of claims . . . to determine compliance by Qualified MAF Physicians with the Settlement Agreement[.]").

[10] As a point of interest, now sole-Class Counsel Christopher A. Seeger submitted a 28(i) letter in this case. *See generally* Class Counsel 28(i) letter dated Sept. 23, 2019. The 28(i) letter concluded with Mr. Seeger adopting "the arguments and authorities contained in the respective briefs of the Appellees NFL Parties and Claims Administrator[.]" *Id.* at 3.

14

settlement."). We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's interpretation of a contract for clear error. *In re Nat'l Football League*, 923 F.3d at 107 n.8. Clear error is a deferential standard of review. *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 86 (3d Cir. 2017). We review a district court's exercise of its "authority to administer and implement a class action settlement for abuse of discretion." *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d 179, 184 n.10 (3d Cir. 2008). "[T]o find an abuse of discretion the District Court's decision must rest on 'a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Id.* (quoting *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir.2006)).

## III.  ANALYSIS

We will affirm the District Court's Orders. First, the District Court correctly determined—after interpreting the contract— that Revised Rules 9, 10(b), 13(k), and 23 are permissible clarifications created for the Settlement Agreement's proper and successful administration—for example, to prevent fraud—and were not amendments. *See* A1-2, 19-23 (the Orders); *see also* A807 (detailing in Article XXVII of the Settlement Agreement the District Court's "continuing and exclusive jurisdiction over" the Settlement Agreement's "*interpretation, implementation, administration, and enforcement*" (emphasis added)); *see also In re Nat'l Football League*, 923 F.3d at 107 n.8 (restating that contract interpretation is reviewed for clear error). Second, the District Court's adoption of the Revised Rules and continued administration of the Settlement Agreement was reasonable and does not constitute an abuse of discretion. *Id.* at 108

15

(noting the District Court's "broad jurisdiction to administer the settlement and resolve issues relating to it"); *see also In re Diet Drugs*, 543 F.3d at 184 n.10.

## A. The District Court's Interpretation of the Settlement Agreement Was Not Clearly Erroneous

The District Court's interpretation of the Settlement Agreement, and its determination that Revised Rules 9, 10(b), 13(k), and 23 did not constitute amendments, was not clearly erroneous. *See In re Nat'l Football League*, 923 F.3d at 107 n.8; *see also* A809 (requiring Class Counsel's written consent for any "change, modification, amendment, or addition" to the Settlement Agreement). District courts may interpret contracts to determine whether alterations to bargained-for terms have occurred. *See, e.g.*, *Cendant Corp. Prides Litig.*, 233 F.3d 188, 189, 193 (3d Cir. 2000) (affirming the district court's interpretation of a settlement agreement in a securities class action suit, and finding the district court's interpretation of the agreement was not clearly erroneous and that the deadline for submitting claims was not part of the parties' bargained-for-agreement and thus could be changed); s*ee also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 312 (3d Cir. 2011) (noting that a district court cannot "modify the terms of a voluntary settlement agreement between parties" (citation and emphasis omitted)); *Collins v. Educ. Therapy Ctr.*, 184 F.3d 617, 621 (7th Cir. 1999) (rejecting "the notion . . . that the court effectively amended the settlement . . . [because the] order does not alter the terms of the settlement.").

Here, the District Court correctly interpreted the Settlement Agreement and found that what was promised to eligible players, in part, was the ability to see a Qualified MAF

Physician.  *See, e.g.*, A21 (finding for example that "Retired Players have [no] absolute right to *choose* a MAF Physician," only the right to go to one and receive a diagnosis (emphasis added)).  Revised Rules 9, 10(b), 13(k), and 23 do not negate that promise.  Rather, they provide clarifications as to how Qualified MAF Physicians may be seen, how diagnoses are to be made ethically, and how diagnoses are to be reviewed efficiently.

Indeed, as explained by the District Court, Revised Rules 9, 10(b), 13(k), and 23 were permissible clarifications that "facilitate the efficient and successful operation of the network of Qualified MAF Physicians."  A2.  The "Revised Rules advance the fundamental goal of the Settlement: to process all meritorious claims as efficiently as possible, while ensuring non-meritorious claims are not paid."  A20.  Thus, as the Revised Rules do not change any fundamental purpose of the Agreement, and only help to facilitate its successful administration, there was no clear error in the District Court's interpretation and conclusion.  *See In re Cendant Corp. Prides Litig.*, 233 F.3d at 193 (applying the clearly erroneous standard to contract interpretation, which is a question of fact).

Specifically, Revised Rules 9 and 10(b) denote geographical restrictions that eligible retired NFL players must abide by when obtaining a diagnosis (*i.e.*, how far a player may travel to see a doctor, provided there are certain exceptions).  The geographical restrictions found in Revised Rules 9 and 10(b) are consistent with the Settlement Agreement's general and broad mandate that a qualifying diagnosis must be made by a Qualified MAF Physician.

As the District Court correctly noted, there is no language in the Settlement Agreement that gives a retired NFL player a

17

"unilateral right to choose a MAF Physician." A21. "[W]hile Retired Players have the choice of seeking certain Qualifying Diagnoses from . . . MAF Physicians, *Retired Players do not have an unfettered right to choose their . . . MAF Physician*." A21 (emphasis added). Further, Revised Rules 9 and 10(b) were designed not to curtail a player's ability to see a Qualified MAF Physician but to prevent potentially fraudulent diagnoses by stopping "forum shopping" for favorable, and potentially unethical, MAF physicians. A22. As such, these two rules directly relate to the concern that certain class members were traveling far distances to see specific doctors that might provide favorable diagnoses. These two rules are not prohibited by any term of the Settlement Agreement, and the District Court's interpretation—that these rules do not amend or alter the Agreement—was not clearly erroneous.

Revised Rule 13(k) likewise seeks to eliminate or reduce potential conflicts of interest by preventing a retired NFL player from seeing a physician who works with the player's law firm as a consultant or testifying expert witness. Revised Rule 13(k) likewise, as the District Court found, is not an amendment to the Settlement Agreement that alters its effect, but "is a commonsense rule designed to remove a possible conflict of interest from the claims process." A23. Nowhere does the Settlement Agreement state that eligible players must be permitted to see doctors with potential conflicts of interest. Revised Rule 13(k) thus helps the Settlement Program remain ethically sound and is not an alteration to the terms of Settlement Agreement. *Collins*, 184 F.3d at 621.

Finally, Revised Rule 23 "merely formalizes part of the role of the AAP," A23, and assists the Claims Administrator to carry out its duties to detect and prevent fraud. *See, e.g.*, A759 ("The Claims Administrator will have the discretion to undertake or

18

cause to be undertaken further verification and investigation . . . of any Claim Package . . . .").  Subsection 2.1(g) of the Settlement Agreement explains that AAP members may "advise the Court or the Special Master with respect to medical aspects of the Class Action Settlement," A721, and Revised Rule 23 provides details on how that can occur, such as, two AAP members will "serve as the Claims Administrator's AAP Leadership Counsel to provide . . . advice and assistance on any medical issues arising in the monitoring of the work of Qualified MAF Physicians" and may  "review . . . specific claims . . . to determine compliance by Qualified MAF Physicians." A14.  Therefore, Revised Rule 23, as the District Court also correctly found, "is not a change to the Settlement Agreement, but only formalizes one of the Settlement's provisions" (*i.e.*, the specific way that AAP members can help the Claims Administrator fulfil its role and successfully determine that players and doctors are complying with the Settlement Agreement's provisions).  A23.

## B.     The District Court Did Not Abuse Its Discretion When Adopting the Revised Rules[11]

We have already recognized the District Court's broad jurisdiction over the Settlement Agreement's administration. *In re Nat'l Football League*, 923 F.3d at 102 (citing to § 27.1 of the Settlement Agreement that details the District Court's "continuing and exclusive jurisdiction over . . . [a]ny disputes or controversies arising out of, or related to, the interpretation, implementation, administration, and enforcement of th[e] Settlement Agreement").  Similarly, per the Settlement

---

[11] We note that Appellants apparently argue that only the adoption of Rules 9 and 10(b) constituted an abuse of discretion, and thus speak to those two rules herein.

Agreement, the Claims Administrator must "take all steps necessary to faithfully implement and administer the Settlement Agreement[.]" A768; *see also* A770 (detailing the "Roles and Responsibilities" of the Claims Administrator). It is thus abundantly clear that under the Settlement Agreement, the District Court and the Claims Administrator had the authority to request clarifying revised rules—which do not alter the Agreement—that would permit the efficient administration of the Settlement Agreement, including but not limited to the prevention of fraudulent activities. *See, e.g.*, A770 (directing the Claims Administrator to "establish and implement procedures to detect and prevent fraudulent submissions to, and payments of fraudulent claims from, the Monetary Award Fund"). The District Court's directive to the Claims Administrator and adoption of the Revised Rule was thus not unreasonable and does not constitute an abuse of discretion. *See In re Diet Drugs*, 543 F.3d at 184 n.10.

The Revised Rules were, as the District Court explained, adopted to "facilitate the efficient and successful operation of the network of Qualified MAF Physicians." A2. Indeed, the rationale for the initial Rules Governing Qualified MAF Physicians, communicated by the neutral Claims Administrator, was "[t]o promote certainty and uniformity in [the Physicians'] performance." A1158. Thus, the Revised Rules were designed "to help th[e] [Settlement] Program deliver benefits quickly and correctly to Settlement Class Members who deserve them." A1159. This aligns with the District Court's January 9, 2019 mandate that the Claims Administrator should develop clarifications regarding the then existing Rules Governing Qualified MAF Physicians, as well as with the provisions of the Settlement Agreement itself that

20

direct the Claims Administrator to ferret out fraud and promote the efficient administration of the Agreement.

As such, it is clear that the Revised Rules were created, in part, due to the Claims Administrator's concerns, after having reviewed many claim submissions, that there were certain "clients of a law firm traveling thousands of miles to see the same physician rather than those available to them in their hometowns and excessively high numbers and rates of payable diagnoses from those doctors[.]" A1160–61. Therefore, because the Revised Rules were not amendments to the Settlement Agreement, and because the Revised Rules aided the proper administration of the Settlement Agreement, the District Court acted reasonably in adopting the Revised Rules. *In re Diet Drugs*, 543 F.3d at 184 n.10.

## IV. CONCLUSION

For the reasons set forth above, we will affirm the District Court's April 11 and May 16 Orders.