KINNEY *v.* BOUNDS ET AL.

(Decided September 13, 1933.)

*Mr. Ernest T. Johnson* and *Messrs. Jones & Jones,* for plaintiff and Board of County Commissioners of Licking county.

*Messrs. Silbaugh & Silbaugh,* for defendants Maude W. Bounds and others.

*Messrs. Flory & Flory* and *Mr. Herbert A. Crane,* for Union Joint Stock Land Bank of Detroit.

MONTGOMERY, J. On March 25, 1903, Nelson Bounds executed his will, the three items of which are as follows:

"Item 1. It is my will that all my debts and last expenses shall be paid."

"Item 2. I give, devise and bequeath all the rest and residue of the property which I shall die seized to my brother, Harry Bounds, absolutely. He, however, to provide a living for Louise Kinney as long as she shall remain unmarried."

"3. I nominate and appoint my brother, Harry Bounds, as executor of this will."

On May 24, 1919, he executed a codicil in the following language:

"I, Nelson Bounds, having upon the 25th day of March, 1903, executed the foregoing last will and testament, do now hereby ratify the foregoing will and do now make and declare the following to be a codicil thereto, that is to say:

"I recommend that my executor hereinbefore named, Harry Bounds, be not required to give bond for the faithful performance of said trust by the Probate Court.

"I hereby authorize and empower my said executor to sell any and all real estate of which I may die seized to such persons and for such prices and upon such terms as my said executor shall deem proper, and execute and deliver deeds in fee simple to the purchaser or purchasers in all respects as if said conveyance were made by me.

"I now declare the foregoing will and codicil now to be my valid last will and testament."

Nelson Bounds died in the year 1920. The legatee and devisee, Harry Bounds, a brother, took possession of the real estate of the decedent, sold all of the real estate, except a farm of 56 acres, on which he executed a mortgage now owned and held by the defendant the Union Joint Stock Land Bank of Detroit. Harry Bounds died in the spring of 1929, insolvent.

The record shows that Louise Kinney, who had been a servant in the Bounds family for nearly forty years at the time of the death of Nelson Bounds, continued to reside upon this farm until about October, 1929, when, for some reason, not material in the decision of this case, she left the farm.

In the year 1930 she filed a petition in the court of common pleas of Licking county, Ohio, asking for a construction of the will and codicil of Nelson Bounds, hereinbefore recited, and for a determination of her rights.

The record shows that subsequently thereto she was committed to the County Infirmary of Licking County, Ohio, and the county commissioners of Licking county, becoming parties to the proceeding instituted by her, filed their cross-petition in which they prayed that the reasonable support of Louise Kinney from the date of the death of Nelson Bounds be declared to be the first and best lien on the real estate, to wit, this farm; that the amount of the lien be ascertained and the real estate sold and an amount sufficient to satisfy said lien be paid to them under and by virtue of Sections 2548, 2549 and 2550 of the General Code of Ohio.

Maude Bounds et al., as heirs at law of Harry Bounds, filed their answer denying the lien claimed by the county commissioners, and denying that Louise Kinney had any claim upon the said real estate. A similar answer was filed by the Union Joint Stock Land Bank of Detroit, as mortgagee, having an interest in said real estate.

The case having been tried in the court of common pleas, and a determination had in that court, an appeal was perfected to this court.

As stated by counsel in open court, and correctly stated, the questions before this court to determine are two in number: First, was it the intention of Nelson Bounds to create a trust or lien upon his real estate in favor of Louise Kinney? Second, if the first question be answered in the affirmative, did he put that intention into effect by the will and codicil which he executed?

We have no difficulty in answering the first proposition in the affirmative. Had Nelson Bounds any notion that he had devised this real estate to Harry Bounds free from the obligation to provide a living for Louise Kinney, he would not have made the provision contained in the third paragraph of the codicil to the will. Had Harry Bounds been vested with a fee-simple estate in this real estate, free from this

charge, the power given in the codicil would have been vain and useless. The reasonable assumption is that Nelson Bounds recognized the change in his condition between 1903 and 1919, and realized that the real estate was the only source from which this living could be provided, and what he did was to vest in his executor power to sell the real estate upon such terms and conditions as the executor might deem proper, without the necessity of resorting to an action in the courts to sell the real estate to pay this charge.

The Supreme Court of Ohio, in construing a similar will in a case which arose in this county, to wit, *Yearly v. Long,* 40 Ohio St., 27, in the syllabus, says "That the legacy was an equitable charge upon the estate devised." It is true that that case was determined on another proposition, to wit, the statute of limitations; but the pronouncement of the court in construing this will is clear and unmistakable.

Attention is directed to the second branch of the syllabus in the case of *Theobald v. Fugman,* 64 Ohio St., 473, 60 N. E., 606, which is as follows: "2. Legacies not specifically charged upon real estate will, nevertheless, be held to be charged upon such real estate, and be a lien thereon, where it appears that the testator, at the time the will was made and at his decease, had no moneys or personal estate of any kind out of which such legacies could be paid, unless a contrary intention is manifest from the whole will."

Apply that proposition to the facts in the instant case: The record clearly shows that at the time of the execution of this codicil, which codicil was a ratification and a republication of the original will, Nelson Bounds had no money or personal estate anything like sufficient "to provide a living for Louise Kinney as long as she remained unmarried." The record is silent as to what personal property Nelson Bounds may have owned at the time of the execution of the will in 1903, but the fact is as stated as to his condition in 1919 and

in 1920, and viewing this codicil, as we do, as a republication of the will, his intention in this respect is to be construed as of the date of the execution of the codicil.

Council on both sides have dwelt much on two cases, *Knepper* v. *Knepper, Exr.,* 103 Ohio St., 529, 134 N. E., 476, and *Koontz* v. *Hubley,* 111 Ohio St., 414, 145 N. E., 590, and upon the effect which they must have in construing this will, and upon their claimed divergence. It seems to us that there is no necessary contradiction between the two. The *Koontz case* does not overrule the *Knepper case*. It is distinguished from it by virtue of the facts in the case.

The first branch of the syllabus in the *Knepper case* reads: "1. The intention of a testator to charge legacies on real estate specifically devised must clearly appear or be clearly deducible from the language of the will. But it is not necessary that the charge shall be made in express terms or that any particular language be used. The intention to charge will be given effect when it clearly appears from the provisions of the instrument."

As we have heretofore stated, in our judgment the intention of Nelson Bounds to make this charge upon the real estate clearly appears and is clearly deducible from the language of the will and codicil, and, so appearing, effect must be given to the intention.

The syllabus in the *Koontz case* is as follows: "The rule of construction applicable to wills, that where legacies are given generally and no fund is provided from which they are to be paid and afterward the residue of the real and personal estate is given in one mass the legacies constitute a charge upon the whole residuary estate, is not absolute. It is to be applied only in those cases where from the terms of the will and a consideration of all the circumstances it is fairly to be inferred that at the time the will was made the testator must have realized that he had no property out of

which such legacies could be paid and that satisfaction out of the residuary estate is necessary. (*Theobald* v. *Fugman,* 64 Ohio St., 473, 60 N. E., 606, second proposition of syllabus, approved and followed.)''

The approval of the case of *Theobald* v. *Fugman,* 64 Ohio St., 473, *supra,* is to be noted. This *Koontz case* goes only so far as to hold that the charging of such a bequest upon real estate is not absolute, but is to be applied in cases where, from the terms of the will, and considering the circumstances of the testator, he must have realized that he had no other property out of which the bequest could have been paid. As shown above, this is clearly the situation in the instant case.

We find a number of authorities outside of Ohio to the same effect. In *Porter* v. *Jackson,* 95 Ind., 210, 48 Am. Rep., 704, it was held that where real estate is devised to a person, who, by the will is directed to pay a legacy, such legacy is an equitable charge upon the real estate so devised.

In *Hogg* v. *Browning,* 47 W. Va., 22, 34 S. E., 754, it is held that where a testator gives land to a devisee and requires him to pay a legacy, there can be no presumption that the testator intended the devisee to pay the legacy out of the personalty rather than the realty, but that the presumption should be the other way; that is, that he meant the land to be good for the legacy, because he obliged the devisee to pay the legatee.

This matter is rather fully discussed in L. R. A., 1917A, 622 *et seq.* Commenting upon the Pennsylvania decisions to the effect that a direction to devisees to pay money imports nothing more than a personal obligation, this statement is made, ''but in their adherence to this rule of construction, the Pennsylvania courts seem to stand alone.''

Counsel for the Bounds heirs, and for the Union Joint Stock Land Bank of Detroit, contend that a fee-simple estate having been given to Harry Bounds by

the first sentence of item 2 of the will, this estate cannot be affected by a subsequent bequest or legacy, under the doctrine laid down in *Anderson* v. *Cary,* 36 Ohio St., 506, 38 Am. Rep., 602; *Widows' Home* v. *Lippardt,* 70 Ohio St., 261, 71 N. E., 770; and *Baker et al., Exrs.,* v. *Alexander,* 24 Ohio App., 117, 156 N. E., 223.

The answer to this contention is to be found in the concluding sentences of the opinion of the case of *Anderson* v. *Cary, supra,* to wit: "The owner of property cannot transfer it absolutely to another, and at the same time keep it himself. We fully admit that he may restrain or limit its enjoyment by trusts, conditions or covenants, but we deny that he can take from a fee simple estate its inherent alienable quality, and still transfer it as a fee simple."

It follows that there may be a decree for the defendants the board of county commissioners of Licking county, Ohio. Under the evidence, however, they are not entitled to anything prior to the time that Louise Kinney left this farm, which, according to her own evidence, was October, 1929. She is entitled to have a living from this farm commensurate with her manner of living during the years when she lived upon it, and there may be a finding of $20 per month from and after October, 1929, for her "living," so long as she lives, or during her expectancy of life, which charge is found to be the first and best lien upon the real estate described in the pleadings, and there may be a decree accordingly.

*Decree accordingly.*

SHERICK, P. J., and LEMERT, J., concur.