PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3187
_____


DLJ MORTGAGE CAPITAL, INC.

v.

ANA SHERIDAN; ROY SHERIDAN; DEPARTMENT OF
TREASURY INTERNAL REVENUE SERVICE


ROY SHERIDAN,
                Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Civil No. 3-16-cv-00085)
District Judge: Hon. Curtis V. Gomez
_____


Argued May 20, 2020
Before: GREENAWAY JR., PHIPPS, and FUENTES,
*Circuit Judges*.

(Filed:  September 22, 2020)

Namosha Boykin, Esq.  [ARGUED]
Suite 8-310
2369 Kronprindsens Gade
St. Thomas, VI 00802
        *Counsel for Appellant*

Matthew R. Reinhardt, Esq.
Kyle R. Waldner, Esq.  [ARGUED]
Quintairos Prieto Wood & Boyer
1000 Blackbeard's Hill, Suite 10
St. Thomas, VI 00802
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

Plaintiff DLJ Mortgage Capital, Inc. ("DLJ") brought a debt and foreclosure action against Roy Sheridan ("Sheridan" or "Roy Sheridan"), Ana Sheridan, and the Internal Revenue Service ("IRS" or the "Government").  The parties proceeded to a bench trial.  At the close of DLJ's case-in-chief, the District Court granted judgment in favor of DLJ under Rule 52(c) of the Federal Rules of Civil Procedure, concluding that DLJ satisfied all elements of its debt and foreclosure claim.  On appeal, Roy Sheridan, the only Appellant, complains that he was not heard prior to judgment.

We must decide whether the District Court properly granted judgment immediately after DLJ's case-in-chief.

2

Because we find that, under the circumstances of this case, Roy Sheridan was "fully heard" prior to judgment, and that his remaining challenges are meritless, we will affirm the Judgment of the District Court.

I

A.

In August 2007, Ana and Roy Sheridan executed a promissory note in favor of FirstBank of Puerto Rico ("FirstBank") in the amount of $725,000 (the "Note"). The Sheridans also executed a mortgage granting FirstBank a first priority security interest in two real estate properties as security for the Note (the "Mortgage"). Under the terms of the Note, the Sheridans were jointly and severally liable for the full amount of the loan. The Note further provided that FirstBank "may transfer this Note" and "[FirstBank] or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"[1]

In 2009 and 2011, the Sheridans and FirstBank agreed to modify the Note and Mortgage by, among other things, increasing the principal sum and extending the maturity date of the loan. Both modifications to the Mortgage stated that, except as amended, the original terms of the Mortgage remained in effect.[2] The 2009 amendment to the Note also

---

[1] App. 488.

[2] The 2009 Mortgage Modification specifically states that "[i]n all other respects, the mortgage shall remain unchanged and shall remain in full force and effect." App. 518 (emphasis omitted). The 2011 Mortgage Modification similarly states

contained similar language reinforcing the unaffected terms of the original Note.

In 2012, the Sheridans defaulted under the terms of the Note by failing to make several monthly payments. A year later, FirstBank assigned the Mortgage to DLJ (the "Assignment"). FirstBank also transferred physical possession of the Note to DLJ.

In 2015, DLJ, through its loan servicer, Select Portfolio Servicing, Inc. ("SPS"), sent the Sheridans a Notice of Default-Right to Cure. The Notice of Default provided the Sheridans with the amount still owing under the Note and a timeframe to cure the default. The Sheridans failed to cure the default.

B.

In October 2016, DLJ commenced a debt and foreclosure action against the Sheridans and the IRS. The IRS was a named defendant to the action because of its federal tax lien, in the amount of $18,924, against Roy Sheridan and recorded against the properties used to secure the Note.[3]

---

that "[e]xcept as expressly set forth in and modified by this Agreement, the terms and conditions of the Note, Mortgage, Assignment of Leases and Rents and the Loan Documents, as amended, remain unchanged and shall remain in full force and effect according to the original terms and tenor thereof." App. 521 (emphasis omitted).

[3] Under Virgin Islands law, "[a]ny person having a lien subsequent to the plaintiff upon the same property or any part thereof, or who has given a promissory note or other personal

4

The Sheridans and the IRS answered the complaint. The Sheridans asserted ten affirmative defenses, which, as relevant on appeal, did not include any allegation of fraud. The parties then proceeded to discovery. Under the District Court's Trial Management Order, discovery requests and production were to be completed by September 2017. Although DLJ complied with its discovery obligations, the Sheridans failed to participate in discovery.

Before trial, the parties attempted mediation. Over the course of several months, the parties participated in at least three mediation sessions presided over by the Magistrate Judge. Unfortunately, the parties were unable to reach a settlement. DLJ and the IRS did, however, execute a consent to judgment of foreclosure where the IRS conceded that its tax lien was subordinate to DLJ's first priority security interest in the properties.[4]

One week prior to trial, Roy Sheridan[5] filed witness and exhibit lists identifying a non-party witness from FirstBank and documents that were not disclosed or provided during discovery. Upon DLJ's motion to exclude evidence not

obligation for the payment of the debt or any part thereof, secured by the mortgage or other lien which is the subject of the action, shall be made a defendant in the action. Any person having a prior lien may be made defendant at the option of the plaintiff, or by the order of the court when deemed necessary." 28 V.I.C. § 532.

[4] Although the IRS moved to be excluded from trial, the Government was ultimately present at trial.

[5] At trial, Roy and Ana Sheridan, then divorced, were represented by separate counsel.

previously disclosed, the Magistrate Judge ordered that "the documents and witnesses not previously disclosed, with the exception of the Sheridans themselves, be excluded from trial."[6] In addition, the night before trial, Roy Sheridan moved for leave to file a "Joint First Amended Answer" to include allegations of fraud and violations of the Truth in Lending Act.[7]

The next day, the parties proceeded to a one-day bench trial. The District Court heard from DLJ's fact-witness, Linda Holmes, who is an employee of SPS, and Roy Sheridan. At the conclusion of its case-in-chief, DLJ moved for a "directed verdict."[8] The District Court heard from all parties as to the elements of the debt and foreclosure claims. In response to DLJ's request for a directed verdict, Roy Sheridan argued that DLJ lacked standing to enforce the Note and Mortgage and that, therefore, the District Court did not have jurisdiction over the case. Ana Sheridan, who moved for judgment as a matter of law, made similar arguments contesting DLJ's standing to enforce the Note and Mortgage.[9]

---

[6] App. 417.

[7] App. 466. The District Court did not explicitly rule on the motion.

[8] App. 272-73. Because the parties proceeded with a bench trial, and consistent with DLJ's arguments on appeal, we construe DLJ's motion as a Rule 52(c) motion for judgment on partial findings, rather than as a motion for a directed verdict. *See* Fed. R. Civ. P. 52(c).

[9] Notably, though, Ana Sheridan conceded that there was evidence that there was a mortgage and a note, and that there was a breach of the mortgage and the note. App. 288-89.

Upon hearing from the parties, the District Court made several findings and concluded that DLJ's evidence was sufficient to prove the elements of its debt and foreclosure claim, including that DLJ had standing to enforce the Note and Mortgage. Although Roy Sheridan reminded the District Court that it had not ruled on whether he would be "able to present his affirmative defenses concerning fraud," no party challenged the judgment at that time as premature.[10] On August 10, 2018, the District Court filed its written Judgment, providing its factual findings, conclusions of law, and several orders granting relief.

Thirty-one days later, Roy Sheridan moved for a new trial or for reconsideration of the judgment, arguing that the District Court erred in entering judgment without the parties attempting to mediate in good faith and that the Judgment was void because it deprived him of property without the opportunity to be heard.[11]

On October 1, 2018, Roy Sheridan filed a notice of appeal.[12]

II[13]

DLJ contests our jurisdiction, arguing that Sheridan's notice of appeal was untimely. "We have jurisdiction to review

---

[10] App. 314.

[11] The District Court has not ruled on the post-trial motion.

[12] Ana Sheridan and the IRS are not participating in this appeal.

[13] The District Court had jurisdiction under 28 U.S.C. § 1332(a)(1) and 48 U.S.C. § 1612(a).

7

our own jurisdiction" and find that we can appropriately exercise jurisdiction under 28 U.S.C. § 1291 and § 1294(3).[14]

DLJ argues that we lack jurisdiction over Sheridan's appeal because Sheridan did not file the appeal within thirty days of the District Court's written Judgment dated August 10, 2018. Sheridan responds that the appeal is timely because the IRS's involvement in the proceedings triggered the 60-day period for filing a notice of appeal under Federal Rule of Appellate Procedure ("FRAP") 4(a)(1)(B)(ii). We need not decide whether the IRS's involvement in the proceedings triggered application of the 60-day deadline, because the District Court's failure to comply with the separate-order requirement of Federal Rule of Civil Procedure ("FRCP") 58 renders this appeal timely.

"Under [FRAP] 4(a)(1)(A), notices of appeal must generally be filed 'within 30 days after the . . . order appealed from is entered.'"[15] However, where FRCP 58(a)(1) "'requires a separate document,' the judgment is considered entered 'when the judgment or order is entered in the civil docket under [FRCP] 79(a) and when the earlier of these events occurs: [1] the judgment or order is set forth on a separate document, or

---

[14] *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 222 (3d Cir. 2007).

[15] *Id.* at 223 (quoting Fed. R. App. P. 4(a)(1)(A)).

[2] 150 days have run from entry of the judgment or order in the civil docket under [FRCP] 79(a).'"[16]

Under FRCP 58(a), "[e]very judgment and amended judgment must be set out in a separate document."[17]  If no separate document exists, "an appellant has 180 days to file a notice of appeal—150 days for the judgment to be considered entered, plus the usual 30 days from the entry of judgment."[18] There are certain exceptions to FRCP 58, none of which are relevant here.

To determine whether the District Court's August 10 Judgment can be properly characterized as a separate document, we must consider whether it meets the following requirements: "(1) it must be self-contained and separate from the opinion, (2) it must note the relief granted, and (3) it must omit (or at least substantially omit) the trial court's reasons for disposing of the claims."[19]

Here, the August 10 Judgment does not comply with FRCP 58's separate-document rule.  It is neither "self-contained and separate from the opinion," nor does it omit its reasoning in disposition of the claim.[20]  We have said that "[t]o be independent of the court's opinion, an order must be separately titled and captioned, not paginated consecutively to the opinion or memorandum, not stapled or otherwise attached

---

[16] *Id.* (quoting Fed. R. App. P. 4(a)(7)(A)(ii)).
[17] Fed. R. Civ. P. 58(a).
[18] *LeBoon*, 503 F.3d at 223 (internal quotation marks omitted).
[19] *Id.* at 224.
[20] *Id.*

9

to the opinion, and must be docketed separately."[21] The Judgment, which is ten pages, contains one case caption, the trial judge's signature on the last page of the document, and is consecutively paginated. The judgment portion of the document begins on page seven, where it notes the relief granted and makes several orders. Further, although titled and docketed as a "Judgment," and noting the relief granted, the document contains the District Court's factual findings and legal discussion disposing of DLJ's claims. This precludes the August 10 Judgment from complying with FRCP 58's separate-document rule.[22]

Accordingly, the August 10 Judgment should be considered "entered" 150 days after August 10, 2018, on January 7, 2019, under FRAP 4(a)(7)(A)(ii).[23] Sheridan had thirty days after that to file his notice of appeal.

Because Sheridan filed his notice of appeal in October 2018, well within the additional 180 days, we have jurisdiction over this appeal.[24]

---

[21] *Id.* at 224.

[22] *In re Cendant Corp. Sec. Litig.*, 454 F.3d 235, 245 (3d Cir. 2006) (holding that an order failed to comply with Rule 58's separate order requirement "because it contained an extended discussion of facts and procedural history").

[23] Fed. R. App. P. 4(a)(7)(A)(ii).

[24] Although Sheridan filed his notice of appeal before the judgment was formally entered, "we are not prevented from entertaining it." *LeBoon*, 503 F.3d at 224 n.5 ("Filing Before Entry of Judgment. A notice of appeal filed after the court announces a decision or order — but before the entry of the

10

## III

Sheridan's primary argument is that the District Court erred in granting judgment at the close of DLJ's case-in-chief without allowing him to be heard on his evidence and defenses. He also challenges (i) the District Court's finding that DLJ had standing to bring this action and enforce the Note and Mortgage, (ii) the monetary award granted to DLJ, and argues (iii) the judgment is void because the parties did not attempt to mediate in good faith.

## A.

At the close of its case-in-chief, DLJ moved for judgment based on partial findings. Sheridan did not object to the District Court's consideration of the motion at that time. Instead, the parties proceeded to make their respective arguments as to whether DLJ met its burden of providing evidence sufficient to establish its debt and foreclosure claims and, more generally, whether DLJ had standing to bring this action.[25] Having failed to successfully challenge DLJ's evidence, Sheridan now claims that the District Court erred in granting DLJ's motion because it deprived him of the opportunity to be heard.

---

judgment of order — is treated as filed on the date of and after the entry" (quoting Fed. R. App. P. 4(a)(2))); *see also* Fed. R. App. P. 4(a)(7)(B) ("A failure to set forth a judgment or order on a separate document when required by [FRCP] 58(a)(1) does not affect the validity of an appeal from that judgment or order.")

[25] We note that Ana Sheridan also moved for "judgment as a matter of law." App. 288.

It gives us pause that the District Court granted judgment in favor of DLJ at the close of DLJ's case-in-chief. Indeed, while we have recognized that a district court has wide latitude in the management of civil trials, we have also observed that the Federal Rules of Civil Procedure "repeatedly embody the principle that trials should be both fair and efficient."[26] Nonetheless, under the circumstances of this case, we find relief was appropriate under Rule 52(c).

Rule 52(c) states:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).[27]

We have explained that any party may make a Rule 52(c) motion, and the court may grant such motion, "at any

---

[26] *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 609 (3d Cir. 1995).
[27] Fed. R. Civ. P. 52(c).

time during a bench trial, so long as the party against whom judgment is to be rendered has been 'fully heard' with respect to an issue essential to that party's case."[28] But that a party be "fully heard" does not mean that a party must be allowed "to introduce every shred of evidence that a party wishes, without regard to the probative value of that evidence."[29] "As a result, the court need not wait until that party rests its case-in-chief to enter judgment pursuant to Rule 52(c)."[30] "In this respect, it is within the discretion of the trial court to enter a judgment on partial findings even though a party has represented that it can adduce further evidence, if under the circumstances, the court determines that the evidence will have little or no probative value."[31] In addition, even if the district court believes judgment in favor of the moving party would be appropriate, it remains within the district court's discretion to wait until the

---

[28] *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253, 272 (3d Cir. 2010).

[29] *Id.* at 272 n.21 (quoting *First Va. Banks, Inc. v. BP Exploration & Oil, Inc.*, 206 F.3d 404, 407 (4th Cir. 2000)).

[30] *Id.* at 272; *see also N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 246 n.6 (3d Cir. 2007) ("[T]he Federal Rules of Civil Procedure . . . allow judgment after partial findings against a party that has been fully heard on the relevant issue."); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1031 (9th Cir. 1996) ("[T]he rule 'authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence.'" (quoting Fed. R. Civ. P. 52(c) advisory committee's note)).

[31] *EBC*, 618 F.3d at 272 n.21.

13

non-movant has presented her case or all probative evidence is admitted before entering judgment.[32]

Further, although Rule 52(c) motions are most commonly brought by defendants at the close of plaintiff's case-in-chief,[33] judgments based on partial findings may be entered against both plaintiffs and defendants.[34] Indeed, the history of Rule 52(c) informs our understanding of the rule. Previously, FRCP 41(b) "permitted a court to enter judgment against a plaintiff at the close of his or her case-in-chief if he or she failed to meet the applicable burden of proof."[35] Rule 41(b), however, did not permit a district court to enter judgment in favor of the plaintiff at the conclusion of its case-in-chief. That was the law until 1991, when subdivision (c) was added to Rule 52 and replaced some provisions of Rule 41(b). The Advisory Committee Notes state, in relevant part: "Language is deleted that authorized the use of this rule as a means of terminating a non-jury action on the merits when the plaintiff has failed to carry a burden of proof in presenting the plaintiff's case. The device is replaced by the new provisions of Rule 52(c), which authorize entry of judgment against the defendant as well as the plaintiff, and earlier than the close of the case of the party against whom judgment is rendered."[36] Subdivision (c) therefore "operates more broadly than did its

---

[32] *Id.* at 272.
[33] 9C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2573.1 (3d ed. Supp. 2020).
[34] Fed. R. Civ. P. 52(c) advisory committee's note.
[35] *EBC*, 618 F.3d at 272 n.20 (citing Fed. R. Civ. P. 52(c) advisory committee's note).
[36] Fed. R. Civ. P. 41(b) advisory committee's note (1991 amendment).

predecessor, because courts may now make partial findings on any claim or defense, of any party, at any time."[37]  In short, Rule 52(c) motions may be granted either for or against the plaintiff at the conclusion of plaintiff's case-in-chief.

What is important is that the trial court may make a dispositive finding on an essential factual issue and judgment may be entered when the parties have been provided with the opportunity to submit relevant and probative evidence bearing on that issue.  Courts cannot deprive parties of the opportunity to submit relevant and probative evidence on an issue essential to a party's case, unless the complaining party has forfeited the right to present certain evidence by virtue of its conduct during the litigation.  For example, as relevant here, a party's failure to comply with disclosure obligations under FRCP 26 may result in the trial court preventing that party from using certain evidence or calling certain witnesses at trial.[38]  Under this scenario, a party against whom judgment has been entered under Rule 52(c) cannot complain that she was deprived of the opportunity to be heard absent error in the trial court's decision to preclude the party from offering the excluded evidence.  In the usual scenario where both parties have properly brought the case to trial, judgment based on partial findings may be appropriate when both parties have been "fully heard" and the court is able to make a dispositive finding based on the evidence presented.

Here, in view of the particular circumstances of this case, we find that Roy Sheridan was "fully heard" within the

---

[37] *EBC*, 618 F.3d at 272 n.20.

[38] Fed. R. Civ. P. 37(c)(1) (providing potential sanctions for a party's failure to abide by Rule 26(a) or (e)).

meaning of Rule 52(c). In order to succeed on its foreclosure claim, DLJ was required to prove by a preponderance of the evidence that "(1) the debtor executed a promissory note and mortgage, (2) the debtor is in default under the terms of the note and mortgage, and (3) the lender is authorized to foreclose on the property mortgaged as security for the note."[39] On appeal, Sheridan does not contest the first two elements.[40] Rather, he argues that the District Court prevented him from offering evidence to challenge DLJ's standing and authority to foreclose, and prevented him from presenting his affirmative defenses, including fraud. For the reasons discussed below, we disagree.

1.

As to DLJ's standing to enforce the Note and foreclose, DLJ presented the testimony of Linda Holmes, a case manager with SPS. Holmes testified that DLJ is the current holder of the Note and is in possession of the original Note. She also testified that FirstBank transferred the Note to DLJ, and DLJ introduced an "allonge document"[41] at trial to show that it "has

---

[39] *Anthony v. FirstBank V.I.*, 58 V.I. 224, 232 (2013) (quoting *Thompson v. Fla. Wood Treaters, Inc.*, 52 V.I. 986, 995 (D.V.I. 2009)).

[40] It is undisputed that Roy and Ana Sheridan signed the Note and that they are in default under the terms of the Note.

[41] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary 88 (9th ed. 2009). Holmes explained in her testimony that an allonge "giv[es] ownership to another party." App. 203.

16

the original note."[42]  Through Holmes's testimony, DLJ also introduced the Assignment, which assigned the Mortgage from FirstBank to DLJ in 2013.

Sheridan was given the opportunity to contest the evidence submitted in support of DLJ's standing to enforce the Note and foreclose on the properties mortgaged as security for the Note.  Although terse, his counsel cross-examined Holmes on the relevant loan documents, including the Note, allonge, and Assignment.  Indeed, Sheridan's argument that DLJ lacked standing was premised on the face of the loan documents, which Sheridan had an opportunity to inspect and challenge.[43]  Sheridan does not assert that a fuller examination of Holmes would have revealed additional evidence and we will not second-guess counsel's tactical decision to limit her cross-examination.

In addition, Sheridan also testified, and thus had an opportunity to disclose evidence of which he had personal knowledge.  At oral argument, Sheridan suggested that because he was called to testify during DLJ's case-in-chief, his counsel could not have cross-examined him beyond the scope of issues raised during direct examination.  However, to the extent his testimony would have related to DLJ's standing, or rebutted Holmes's testimony, those issues would properly have been elicited during cross-examination.  And, to the extent he sought to testify as to matters beyond the scope of cross-examination, he could have asked the District Court to exercise its discretion

---

[42] App. 217.
[43] Indeed, Sheridan conceded at oral argument that we can rule on the issue concerning the allonge documents presented by DLJ on the record before us.

17

to permit such testimony under Federal Rule of Evidence 611(b).[44] Sheridan did neither. Further, although he was quite possibly unaware that the District Court would render judgment at the conclusion of DLJ's case-in-chief, Sheridan did not ask the District Court for permission to testify again at any time prior to the District Court ruling in favor of DLJ.

Sheridan also engaged in an extensive colloquy with the District Court as to DLJ's standing to foreclose, including whether the Assignment was defective and whether DLJ held only a partial interest in the Assignment. The District Court allowed all parties to present their arguments before deciding the issue of DLJ's standing and authority to foreclose. Sheridan did not, at that time, indicate what further evidence, including any rebuttal evidence, he had to contest DLJ's standing. Upon hearing that the parties had nothing further to present on the issue of standing, the District Court properly exercised its discretion in granting judgment in favor of DLJ.[45]

Critically, besides recalling Sheridan to the stand, there appears to have been no evidence for Sheridan to present. Because Sheridan failed to participate during discovery, the

---

[44] Fed. R. Evid. 611(b) ("Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility. The court may allow inquiry into additional matters as if on direct examination.").

[45] At the conclusion of the proceedings, the District Court asked the parties whether there was "[a]nything else . . . to address[.]" App. 313. Sheridan mentioned only his legal challenge to the Assignment and ability to raise his defense of fraud, which, as discussed *infra*, the District Court was within its discretionary power to deny.

Magistrate Judge denied Sheridan's untimely non-party subpoena to compel testimony from a FirstBank employee and ordered that "documents and witnesses not previously disclosed [by the Sheridans], with the exception of the Sheridans themselves, be excluded from trial."[46] Thus, Sheridan could have only challenged the validity of the loan documents, including the Note, allonges, and Assignment through cross-examination of Holmes, which he was given the opportunity to do, or through his own testimony, to the extent he had any personal knowledge. To date, Sheridan has not indicated what additional admissible evidence he intended to present to contest DLJ's standing.[47]

The District Court heard and considered Sheridan's arguments concerning the transfer of the Note from FirstBank to DLJ and the validity of the Assignment. Accordingly, we find that he was fully heard with regard to DLJ's standing to foreclose.

2.

Sheridan also argues he was not fully heard because the District Court prevented him from presenting evidence supporting his affirmative defenses of fraud and illegality under the Truth in Lending Act. Again, we disagree.

Sheridan moved to amend his answer to assert defenses of fraud and illegality the day before trial was scheduled to

---

[46] App. 417. Sheridan does not challenge this ruling on appeal.
[47] Indeed, at oral argument, Sheridan conceded that, at the time of trial, there was no further witness he intended to call to challenge DLJ's standing to enforce the Note.

begin. The District Court did not explicitly rule on the motion prior to judgment. However, in its written Judgment, the District Court denied all pending motions as moot. We construe the District Court's decision to proceed to judgment at the conclusion of the bench trial as an implicit denial of the motion for leave to amend.[48] Thus, Sheridan's argument that he was deprived of the opportunity to be heard with regard to his affirmative defenses of fraud and illegality is viable only if he can show that the District Court abused its discretion in failing to grant his motion for leave to amend his answer.

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires," and we have consistently adopted a liberal approach to the allowance of amendments.[49] Even when a party is late in moving for leave to amend, we have expressed a preference for allowance of the amendment, so long as the opposing party is not

---

[48] *See United States v. Freeman*, 763 F.3d 322, 711 n.10 (3d Cir. 2014) (construing the court's decision to proceed to final judgment as an implicit denial of the defendant's motion for a new trial); *see also United States v. Depew*, 210 F.3d 1061, 1065 (9th Cir. 2000) ("We treat the district court's failure to rule on [the defendant's] motion as a denial of it."); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) ("The denial of a motion by the district court, although not formally expressed, may be implied by the entry of a final judgment or of an order inconsistent with the granting of the relief sought by the motion.").
[49] *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 886–87 (3d Cir. 1992) (quoting Fed. R. Civ. P. 15(a)).

prejudiced by the delay.[50]  "It is well-settled that prejudice to the nonmoving party is the touchstone for the denial of an amendment."[51]  And we review the denial of leave to amend for abuse of discretion.[52]

Here, Sheridan's motion was untimely, and the late assertion of fraud would have prejudiced DLJ.  Sheridan's original answer asserted boilerplate affirmative defenses, none of which contained any allegations of fraud or violations of the Truth in Lending Act.  Under the District Court's Trial Management Order, the parties were given until January 2017 to amend their pleadings.  Of course, Sheridan failed to amend by this date.  And he does not explain his failure to do so.[53]  Instead, he waited over one year from when the complaint was filed and several months after the completion of discovery to

---

[50] *See Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991) ("Unless the opposing party will be prejudiced, leave to amend should generally be allowed.").

[51] *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978).

[52] *Berkshire Fashions*, 954 F.2d at 886.

[53] In addition to satisfying the Rule 15(a) standard, Sheridan was also required to demonstrate good cause under Federal Rule of Civil Procedure 16(b)(4) to amend his answer after the deadline set in the Trial Management Order.  *See Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316, 317 (3d. Cir. 2020) (clarifying that "when a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) . . . applies" (quoting Fed. R. Civ. P. 16(b)(4)).  Sheridan's failure to address the required showing of good cause further supports the District Court's denial of the motion for leave to amend.

move for leave to amend.[54]  Even if Sheridan could not have asserted his defenses of fraud when he filed his original answer, he could have exercised due diligence and moved for leave to amend soon after discovery was complete.  His proposed amended answer was based on discovery DLJ provided, which shows that Sheridan had knowledge of his defenses months before trial.

Further, because DLJ did not have notice of Sheridan's defenses, the untimely defense would likely have required additional discovery.  Sheridan's defense of fraud relates to the conduct of FirstBank employees who were not a party to this action, and the origination of the loan documents.  DLJ's theory in this case presumed the validity of the original loan documents; thus, amendment of the answer would have required DLJ to engage in a last-minute change in strategy.[55]  Further, because Sheridan did not assert allegations of fraud in his original answer, nor did he participate in discovery, no discovery was exchanged with regard to the conduct of

---

[54] Sheridan also argues that the District Court was on notice of his defenses of fraud and violations of the Truth in Lending Act because the defenses were raised in his opposition to DLJ's motion for summary judgment.  However, even this opposition was untimely as it was filed several months after DLJ's motion for summary judgment, which was filed in February 2018, without leave from the District Court, and only ten days before trial.

[55] We also note that Sheridan's proposed amended answer contains no factual allegations as to the fraudulent conduct FirstBank employees engaged in.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud or mistake.").

22

FirstBank employees in issuing the original loan and subsequent modifications. The lack of discovery as to the conduct of FirstBank employees in issuing the original loan documents is presumably why Sheridan served an untimely subpoena on a FirstBank employee.[56]

And, as explained above, in view of the Magistrate Judge's order excluding witnesses and evidence not previously disclosed, Sheridan had nothing to present besides his own testimony to support his purported affirmative defenses.[57] We can hardly fault the District Court for implicitly denying the motion, especially where Sheridan failed to participate in discovery and only moved to amend his answer the night before trial. On this record, we find no abuse of discretion.

3.

We would be remiss if we failed to caution against the practice of granting judgment for the plaintiff before the

[56] Notably, in May 2018, Ana Sheridan sought to reopen discovery and obtain "a full copy of the entire loan file, including, but not limited to, any document relating to First Bank's (Plaintiff's predecessor in interest) evaluation, approval, and administration of the loan." App. 361. In June 2018, the District Court denied the motion.

[57] Presumably in support of his defenses, on June 12, 2018, Sheridan served Patrickson Thomas, a FirstBank employee, with a non-party subpoena seeking to compel his testimony at trial. Both non-party FirstBank and DLJ moved to quash the subpoena. In view of the Magistrate Judge's order excluding evidence and witnesses not previously disclosed, Thomas was not allowed to testify at trial.

23

defendant has presented a case. But such relief was appropriate under the circumstances of this case. Sheridan's inability to present evidence, besides his own testimony, was of his own making. He had full recourse to the federal rules of discovery, but failed to comply with his discovery obligations. He also had ample opportunity to seek leave to amend his answer, and the District Court acted within its discretion in refusing to allow the untimely amendment. Further, Sheridan was allowed to testify, and the record suggests there was no further admissible evidence he intended to present on the relevant and essential issues.

Accordingly, we find that Sheridan was fully heard within the meaning of Rule 52(c) and that this record is ripe for clear error review.[58]

## B.

Having determined that Sheridan was fully heard prior to judgment, we proceed to the merits of his arguments. Sheridan's arguments amount to the following challenges: (1)

---

[58] Sheridan raises a procedural due process claim under the Fifth and Fourteenth Amendments to the United States Constitution, as applied to the Virgin Islands by the Revised Organic Act of 1954. He claims that he was deprived of property without due process of law because he was denied the right to be heard at trial. However, Sheridan concedes that Rule 52(c)'s requirement that a party be "fully heard" is consistent with the federal constitution's due process protections. Because we find that Sheridan was "fully heard" within the meaning of Rule 52(c), we reject his due process challenge.

the District Court erred in finding that DLJ had standing to foreclose on the properties and that, because DLJ lacked standing, the District Court did not have jurisdiction over this action; (2) DLJ failed to join indispensable parties; (3) DLJ was awarded more than it was due under the Note; and (4) judgment was not proper because the parties did not attempt to mediate in good faith. None of these arguments prevail.

"In considering whether to grant judgment under Rule 52(c), the district court applies the same standard of proof and weighs the evidence as it would at the conclusion of the trial."[59] "[T]he [district] court does not view the evidence through a particular lens or draw inferences favorable to either party," and can appropriately make credibility determinations when necessary.[60] The district court "must make findings of fact and conclusions of law pursuant to Rule 52(a)."[61] We review those factual findings for clear error and legal conclusions *de novo*.[62] We will find clear error if we are "left with the definite and firm conviction that a mistake has been committed."[63] And "[w]e will not reverse '[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety' even if we would have weighed that evidence differently."[64]

1.

---

[59] *EBC*, 618 F.3d at 272.

[60] *Id.* at 272-73.

[61] *Id.* at 273.

[62] *Id.*

[63] *Id.*

[64] *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985)).

Sheridan argues that DLJ lacks standing to enforce the Note and Mortgage because (1) the Assignment transferred only a partial interest in the Note and Mortgage to DLJ and (2) the defective chain of Assignments makes it unclear what interest DLJ possesses in the Note. We disagree.

Although we would nevertheless reject Sheridan's challenge to the Assignment,[65] we note that because the Note

[65] Sheridan primarily challenges the Assignment on the basis that, because it omitted Ana Sheridan's name, FirstBank must have meant to transfer only a partial interest to DLJ. Sheridan also implied that the Assignment was invalid because it failed to acknowledge the mortgage modifications. Assuming Sheridan has standing to challenge the Assignment, despite not being a party to the Assignment, the District Court's interpretation of the Assignment, and its determination that FirstBank transferred its entire interest in the Mortgage to DLJ, was not clearly erroneous. A mortgage or an assignment of mortgage is a contract, *see Aviation Assocs. v. V.I. Port Auth.*, 26 V.I. 24, 34-35 (1990) (providing that an assignment "is a matter of contract"), and we "review a district court's interpretation of a contract for clear error," *In re Nat'l Football League Players' Concussion Injury Litig.*, 962 F.3d 94, 101 (3d Cir. 2020). The language of the Assignment unambiguously transfers FirstBank's interests in the Mortgage to DLJ. *See White v. Spenceley Realty, LLC*, 53 V.I. 666, 678 (2010) (looking first at the contract's language to determine the existence of any ambiguity). The Assignment indicates Roy Sheridan's name as a borrower, the date the mortgage was executed, that the mortgage was executed in favor of First Bank, the two properties subject to foreclosure, the original

was transferred to DLJ, under the Restatement (Third) of Property, and absent Virgin Islands law to the contrary, the Mortgage in this case automatically followed the Note.[66]

In challenging DLJ's standing to enforce the Note, Sheridan does not contest DLJ's possession of the Note, rather, he argues that the evidence "reveals various unreconciled, partial [a]ssignments" of the Note and Mortgage which make it "unclear" what interest DLJ possesses.[67]

The debt in this action is evidenced by the Note. There has been no suggestion that a note secured by a mortgage is not a negotiable instrument under the Virgin Islands Uniform Commercial Code.

Under Virgin Islands law, and in conformity with the Uniform Commercial Code, persons entitled to enforce a negotiable instrument are the "(i) the holder of the instrument,

---

principal amount of the loan, and the document number assigned to the Mortgage when it was recorded. These descriptions and recording information identified the mortgage being assigned. Sheridan provides no legal authority for the proposition that omitting a co-borrower's name from an assignment necessarily means that the assignor intends to transfer only a partial interest.

[66] *See UMLIC VP LLC v. Matthias*, 234 F. Supp. 2d 520, 523 (D.V.I. 2002) ("[I]n the Virgin Islands, no separate document specifically assigning and transferring the mortgage which secures a note is required to accompany the assignment of the obligation, because the mortgage automatically follows the note.").

[67] Sheridan Br. 26-27.

(ii) a non-holder in possession of the instrument who has the rights of a holder; or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d)."[68]

As relevant here, a "[h]older" is defined as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]"[69] "Negotiation" is required to make another party a holder.[70] "[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder."[71]

Here, the Note is payable to FirstBank. Therefore, to show that it is a "holder" with standing to enforce the Note, DLJ was required to prove that FirstBank transferred possession of the Note and indorsed the Note to DLJ. Holmes, whose testimony the District Court assigned "great weight,"[72] testified that FirstBank indorsed the Note to DLJ and that DLJ is in possession of the Note. Further, copies of the original Note, the 2009 amendment to the Note, and allonge endorsing the Note to DLJ were produced at trial. The allonge, dated June 20, 2013, includes the loan number, borrowers' names, loan amount, is signed by an employee of FirstBank, and states: "Pay to the Order of: DLJ Mortgage Capital, Inc. Without Recourse FirstBank of Puerto Rico."[73] Holmes testified that

---

[68] *See* 11A V.I.C. § 3–301.
[69] *See id.* § 1–201(b)(20)(A).
[70] *Id.* § 3–201(a).
[71] *Id.* § 3–201(b).
[72] App. 313.
[73] App. 498 (emphasis omitted).

28

this allonge was attached to the Note when DLJ received the 2009 amendment to the Note. Accordingly, as the District Court found, this allonge and Holmes's testimony evidences DLJ's indorsement of the Note to DLJ.[74]

From this evidence, the District Court properly found that the Note was transferred to DLJ, that DLJ is in possession of the Note, and that DLJ has standing and is authorized to enforce the Note.

Sheridan attempts to cast doubt on DLJ's interest in the Note by pointing to a single page which contains only a stamp stating "Pay to the order of: [Blank]. Without Recourse Federal Home Loan Bank of N.Y." and signed by "Paul D. Gourleux, SVP."[75] There is no other writing on this page. This single page is part of an exhibit introduced at trial which contains the 2009 amendment to the Note, one allonge indorsing the Note to blank, and the allonge described above, which indorsed the Note to DLJ. Holmes testified that the stamp was "on the back of the original copies" of the 2009 amendment to the Note when DLJ received the loan documents.[76] There was no further testimony or evidence introduced as to the relevance of the stamp. Nor was there any testimony or evidence suggesting that "Federal Home Loan Bank of N.Y." is an entity with interest in the Note and

---

[74] The District Court stated: "And there has been some suggestion that while the allonge itself isn't an assignment, I don't believe there is any reasonable doubt or any doubt, really, that the allonge is an endorsement of the thing that precedes it, which is the note." App. 312.

[75] App. 496 (emphasis omitted).

[76] App. 250.

29

Mortgage. DLJ's possession of the Note and FirstBank's indorsement, notwithstanding the unsubstantiated challenge to the chain of assignments, provided DLJ with standing to enforce the Note.

In view of Holmes's testimony, DLJ's physical possession of the Note, the allonge endorsing the Note to DLJ, the Assignment, and the lack of evidence to the contrary, we find no clear error in the District Court's finding that the Note and Mortgage were assigned to DLJ and that therefore DLJ is entitled to collect all sums due under the Note and foreclose on the properties mortgaged as security for the Note.[77]

We have carefully considered the remaining issues presented by Sheridan and conclude they are without merit.

\* \* \*

For the reasons stated, we will affirm the Judgment of the District Court.

---

[77] Because we agree that DLJ has standing to enforce the Note and Mortgage, we reject Sheridan's argument that DLJ is not the "real party in interest" within the meaning of Federal Rule of Civil Procedure 17(a) and that the District Court lacked jurisdiction over this action.