**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1793
_____

CARL WILLIAMS,
Appellant

v.

LINODE LIMITED LIABILITY CO, DBA Linode LLC; LINODIAN LLC,
DBA Linode LLC; DANIEL SPATARO; THOMAS ASARO
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:22-cv-01618)
District Judge:  Honorable Joshua D. Wolson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 10, 2025
_____

Before:  KRAUSE, MATEY, and PHIPPS, *Circuit Judges*

(Filed: August 21, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

An employee was fired shortly after a newspaper published an article about his then-romantic partner, a man who had been charged with hiring a hitman to kill the boy with whom he had exchanged sexually explicit photographs. The terminated employee sued his former employer, claiming that his termination was the result of unlawful discrimination based on his age and sexual orientation. After a trial, however, a jury resolved all counts in the employer's favor. On appeal, the terminated employee challenges several of the District Court's discretionary rulings. For the reasons below, we will affirm the judgment.

## FACTUAL BACKGROUND

In the summer of 2020, Carl Williams was in his sixth year working as a network engineer at Linode, a cloud computing company in Philadelphia, Pennsylvania. On August 13, 2020, the *Philadelphia Inquirer* published an article about Williams's then-partner, John Musbach. The article reported that Musbach had previously pleaded guilty to charges related to exchanging sexually explicit images with a minor and was now being charged with hiring a hitman to kill that minor. The article further reported that at a recent hearing concerning Musbach, Williams testified that he was aware of Musbach's history with child pornography. Six days after the article's publication, Linode fired Williams.

## PROCEDURAL HISTORY

After filing a charge with the Equal Employment Opportunity Commission and receiving a right-to-sue letter, Williams sued Linode LLC, his manager, and Linode's Chief Operating Officer in the District Court. He brought claims of unlawful workplace discrimination under two federal statutes: Title VII, *see* 42 U.S.C. § 2000e-2(a), and the Age Discrimination in Employment Act, *see* 29 U.S.C. §§ 623, 626(c)(1). In exercising federal-question jurisdiction over the case, *see* 28 U.S.C. § 1331, on September 1, 2022,

after the Defendants had filed an answer, the District Court issued an initial scheduling order that set a deadline for motions to amend the complaint of September 15, 2022. The case then proceeded through discovery and motion practice.

On January 12, 2024, eleven days before the trial date, the District Court held a final pretrial conference. In anticipation of that conference, Williams submitted a pretrial memorandum, which asserted that in addition to the claims under Title VII and the ADEA, the case involved claims under the Pennsylvania Human Relations Act, *see* 43 Pa. Stat. § 953, and the Philadelphia Fair Practices Ordinance, *see* Phila. Code §§ 9-1101–9-1130. But during the conference, Linode pointed out that Williams did not allege PHRA or PFRO claims in his complaint. Williams agreed but argued that he should be granted leave to amend his complaint to include those claims. Over Linode's objections, the District Court granted Williams until the end of the day to seek leave to amend. The next day, Williams filed a motion to amend. That motion was denied, and in the same order, the District Court dismissed the claims against Williams's manager and Linode's COO.

Also prior to trial, Williams filed a motion *in limine* to exclude all evidence about Musbach under Federal Rule of Evidence 403 on the ground that it would unduly prejudice the jury. The District Court denied Williams's motion as it pertained to the article about Musbach, explaining that reading the article was the only way for the jury to assess Linode's defense – that its legitimate, nondiscriminatory reason for firing Williams was what the article revealed about his relationship with Musbach. The District Court further explained that although other information about Musbach's crimes not contained in the article might ordinarily be inadmissible, here Williams was seeking damages for emotional distress, and so Linode was entitled to introduce evidence that his distress was caused not by his treatment at Linode but rather by the circumstances of his partner's incarceration.

3

On January 23, 2024, the jury trial began. As part of his case, Williams called two of Linode's employees – the Director of People Operations and the COO – to testify about Linode's rationale for firing Williams. Williams sought to impeach those witnesses using a position statement drafted by Linode that contradicted the justification for Williams's firing that they provided during trial. But both witnesses denied ever seeing the document, and so the District Court sustained Linode's objections to questioning about the document for lack of foundation. Once Williams provided a foundation for the position statement, however, he was permitted to cross-examine the COO about it.

Also at trial, during his questioning of Linode's Director of People Operations, Williams attempted to establish that Linode had improperly withheld documents during discovery. But at no point during the litigation had the District Court found that Linode improperly withheld discovery. And the District Court sustained Linode's objection to that line of questioning.

In addition, the District Court permitted Linode to admit the *Inquirer* article into evidence and to reference it during trial. During its opening statement on the first day of trial, Linode mentioned the article and its report of Williams's relationship with Musbach. On the third day of trial, Linode cross-examined Williams about the article. Before trial began on the fourth day, Williams requested a limiting instruction that the *Inquirer* article – which had not yet been introduced into evidence – could be considered only for the effect it had on Linode, not for its truth. The District Court told Williams that he would have to wait until the charge conference to request any limiting instructions. Williams did not request any limiting instructions when the article was admitted into evidence on the fifth day of trial.

4

During the charge conference, when the District Court reviewed the proposed jury instructions with the parties section by section, Williams did not request any limiting instructions with respect to the article.

On January 31, 2024, after a seven-day trial, the jury found in favor of Linode on all counts. Two weeks later, Williams filed a motion for a new trial. In that motion, he again argued that the evidence about Musbach should have been excluded under Rule 403. Relatedly, he asserted that Linode had made false statements about Williams, Musbach, and the relationship between the two, which he contended misled the jury. He further argued that he should have been allowed to cross-examine Linode's witnesses about the position statement and the documents not turned over during discovery. The District Court denied that motion in full.

Through a timely notice of appeal, Williams invoked this Court's appellate jurisdiction, and he now challenges those rulings. *See* 28 U.S.C. § 1291.

## DISCUSSION

Each of the rulings that Williams now challenges – the denial of leave to amend, the denial of his motion *in limine*, the evidentiary rulings at trial, the jury instructions, and the denial of his motion for a new trial – are reviewed for an abuse of discretion. *See DLJ Mortg. Cap., Inc. v. Sheridan*, 975 F.3d 358, 370 (3d Cir. 2020) (denials of leave to amend); *United States v. Miah*, 120 F.4th 99, 106, 112 (3d Cir. 2024) (motions *in limine*); *United States v. Friedman*, 658 F.3d 342, 352 (3d Cir. 2011) (evidentiary rulings and refusals to provide jury instructions); *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (motions for a new trial).[1]

---

[1] Williams also asserts that he is entitled to relief under the cumulative-error doctrine, but that doctrine has been rejected in the civil context. *See U.S. Sec. & Exch. Comm'n v. Infinity Grp. Co.*, 212 F.3d 180, 196 (3d Cir. 2000). Additionally, although he listed in his brief as an "issue[] presented for review" whether the District Court erred in denying his

## A. The Pretrial Rulings

### 1. *The Denial of Williams's Motion to Amend*

Williams argues that the District Court abused its discretion by denying his motion to amend. Williams first expressed an interest in amending his complaint at the final pretrial conference in January 2024 – over sixteen months after the September 15, 2022, deadline imposed by the initial scheduling order and less than two weeks before the start of trial. At that point, it was late in the litigation for the proposed amendment of adding two more claims. Even so, the District Court allowed until the end of the day for amendment. Williams missed that extended deadline and did not attempt to show good cause for doing so. *See* Fed. R. Civ. P. 16(b). It was not an abuse of discretion for the District Court to deny the requested amendment after Williams missed that second, extended deadline.

### 2. *The Denial of Williams's Motion* in Limine *to Exclude Evidence Regarding Musbach's Crimes and Incarceration*

Williams contends that the District Court abused its discretion in denying his motion *in limine*, which sought to exclude the *Inquirer* article as unduly prejudicial. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Williams's argument focuses on the degree of unfair prejudice, not the probative value of the article: he asserts that evidence relating to child pornography was so "inherently inflammatory" that it would

---

motion to disqualify counsel, Williams's Opening Br. 1, he did not cite any cases or evidence in support of that argument, and so he failed to preserve it for appeal, *see Barna v. Bd. of Sch. Dirs.*, 877 F.3d 136, 145 (3d Cir. 2017) ("To be preserved, all arguments must be supported specifically by 'the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.' As a result, we have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing." (internal citation omitted) (quoting Fed. R. App. P. 28(a)(8)(A))); *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 821 n.10 (3d Cir. 2006) ("[P]assing and conclusory statements do not preserve an issue for appeal.").

"cloud[] jurors' judgment and lead[] to verdicts based on disgust rather than fairness." Williams's Opening Br. 18. But the District Court also acknowledged the article's probative value, since Linode asserted that it terminated Williams because of the article. Thus, in light of the article's centrality to Linode's defense, the District Court did not abuse its discretion in concluding that the risk of unfair prejudice did not substantially outweigh the article's probative value. *See Miah*, 120 F.4th at 112 (explaining that a district court's weighing of probativeness and prejudice is "due great deference" – it may be reversed "only if the court's conclusion is 'arbitrary or irrational'" (quoting *United States v. Bergrin*, 682 F.3d 261, 280 (3d Cir. 2012))).

Nor was it an abuse of discretion for the District Court to rule that if Williams presented evidence of emotional distress, then Linode could introduce details of Musbach's crimes and convictions not discussed in the article. If Williams sought to prove emotional distress, then the cause of any such distress was fair game, and consequently, in that circumstance, Linode could introduce evidence that Musbach's actions – not Linode's – caused any such distress.

## B. The Rulings During Trial

### 1. *The Exclusion of the Position Statement for Lack of Foundation*

Williams further challenges the District Court's exclusion of questioning about the position statement. He contends that the witnesses' assertions that they did not recognize the document were not valid bases for prohibiting the document's use during cross-examination. But when the witnesses were unable to authenticate that document – and Williams had not otherwise done so – it was not an abuse of discretion for the District Court to deny inquiries based on the substance of the document. *See Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 401 (3d Cir. 2016) (recognizing the need to have a witness to identify documents used during trial); *see also Forrest v. Beloit Corp.*, 424 F.3d 344, 356,

7

360 (3d Cir. 2005) (explaining that questioning that lacks a proper foundation risks prejudicing or confusing the jury).

## 2. *The Exclusion of Questioning About Alleged Discovery Misconduct*

Williams also argues that the District Court abused its discretion in sustaining Linode's objection to his attempt to introduce evidence that would support an adverse inference instruction for discovery abuses by Linode. *See generally Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983) (explaining that an adverse inference instruction is an instruction that the jury may infer from a party's failure to produce particular evidence that the unproduced evidence was unfavorable to that party). While the appropriateness of such an adverse inference instruction is usually determined through discovery motions, *see* Fed. R. Civ. P. 37(a) (describing the process for compelling discovery), it may still be requested at trial. But given the nature of the topic at issue here, the underlying admissibility of that evidence is a matter most appropriately evaluated outside of the presence of a jury, *see* Fed. R. Evid. 104(a), (c)(3) (stating that hearings on preliminary questions should be conducted without the jury when "justice so requires"). Yet in front of the jury, Williams sought to question a witness who would not know whether Linode had withheld any requested discovery materials and who had not referenced any unproduced documents during their testimony. The District Court did not abuse its discretion in preventing Williams from engaging in that line of questioning.

## 3. *The Denial of Limiting Instructions About the* Inquirer *Article*

Williams further faults the District Court for not providing a limiting instruction regarding the *Inquirer* article about Musbach. But Williams did not request such an instruction when Linode first mentioned the article in its opening statement or even when Linode used the article to cross-examine Williams himself. Rather, Williams waited until

8

the conference before the fourth day of trial to raise that point. *Cf.* Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose – but not against another party or for another purpose – the court, *on timely request*, must restrict the evidence to its proper scope and instruct the jury accordingly." (emphasis added)). Even so, the District Court allowed Williams to raise that issue at the charge conference. And when the article was introduced into evidence on the fifth day of trial, Williams did not then request a limiting instruction. Nor did he request such an instruction at the subsequent charge conference. *See Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 277 (3d Cir. 1998) (explaining that when "counsel was given that opportunity [to make objections to the jury charge] and *never* objected to the charge at issue, the objection was deemed waived" (citing *Piechoski v. Grace Lines, Inc.*, 409 F.2d 66, 70 (3d Cir. 1969))); *cf.* Fed. R. Civ. P. 51(b)–(c) (stating that a request for jury instructions is timely if made at the court's designated opportunity to make requests on the record). Without Williams making a more contemporaneous, targeted request for a limiting instruction with respect to the article – either to be given during the trial or when charging the jury – the District Court did not abuse its discretion.

## C. The Post-Trial Motion

Williams argues that the District Court erred in denying his Rule 59(b) motion, which sought a new trial because, in his view, Linode's trial witnesses made false and misleading claims about Williams and their motivations for firing him. But an assertion that witnesses lied does not justify a new trial – assessing credibility is entrusted to the jury. *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 143 (3d Cir. 2011). The District Court therefore did not abuse its discretion in denying the motion for a new trial.

9

## CONCLUSION

For the reasons above, we will affirm the judgment and order of the District Court.